E.W. AUDET & SONS, INC., et al.

v.

FIREMAN'S FUND INSURANCE
COMPANY OF NEWARK,
NEW JERSEY.

No. 93–580–Appeal.

Supreme Court of Rhode Island.

Jan. 14, 1994.

Mark Jay Hagopian, Visconti & Petrocelli, Providence, for plaintiffs.

Michael Sarli, Gidley, Sarli & Marusak, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter came before the Supreme Court on an appeal by the plaintiffs, E.W. Audet & Sons, Inc. (Audet), and Providence Steel, Inc. (Steel), from the entry of summary judgment for the defendant, Firemen's Fund Insurance Company of Newark, New Jersey (Firemen's), in the Superior Court. The plaintiffs challenge the Superior Court's denial of their motion for summary judgment and the granting of the defendant's cross-motion for summary judgment. We affirm.

Because this case is before us subsequent to the entry of summary judgment, the transcript is brief and contains no testimony. Therefore, the following summary of the facts and travel of the case has been gleaned from the 1989 Arbitrators' Findings and Award and the parties' briefs.

In 1989 Audet and Steel filed this lawsuit against Firemen's, seeking payment for costs incurred as a result of delays in a construction project to expand the wastewater-treatment plant (project) in the city of Cranston (Cranston). The prime contractor on the project was Westcott Construction Corporation (Westcott). Westcott entered into subcontracts with Audet, Crouse Combustion Systems, Inc. (Crouse), and other subcontractors in which the subcontractors agreed to perform work on various aspects of the project. Westcott also purchased metals for the project from Steel. In accordance with the terms of its subcontract, Crouse obtained performance and payment bonds from Firemen's. Crouse, as principal, and Firemen's, as surety, were both obligated to Westcott with respect to the project. Neither Crouse nor Westcott is a party to this lawsuit.

In 1981, Cranston and Westcott entered into a construction contract for the project for more than $21 million. Westcott and Crouse subsequently executed a subcontract in which Crouse agreed "to furnish all labor, materials, equipment and all else" necessary to complete the section of the general contract relating to filter presses, sludge-materials handling equipment, and incineration equipment. Additionally, Westcott entered into a subcontract with Audet for the performance of electrical and lightning-protection work. Westcott also purchased steel and other metals for the project from Steel by purchase order.

Delays in the construction occurred. In accordance with the Public Works Arbitration Act, G.L.1956 (1990 Reenactment) chapter 16 of title 37, Westcott and its subcontractors (including Steel, which was a supplier rather than a subcontractor) brought claims in 1986 for additional compensation for costs incurred as a result of delays that Cranston had allegedly caused; Cranston also asserted counterclaims against Westcott. The three arbitrators conducted hearings and subsequently made findings of fact and an award. The arbitrators pointed out that because no contractual relationship existed between Cranston and the "subcontractors," the claims of the "subcontractors" had to be "passed through" and presented by the

prime contractor. The arbitrators clarified that Westcott's claim included the claims of numerous "subcontractors," among them those of Audet and Steel. In the arbitrators' enumeration of the claims that were included in Westcott's claim, they listed Steel's claim but noted that Steel was involved in the project through purchase order rather than by subcontract.

In their decision, the arbitrators found "that although Westcott was responsible as general contractor [sic] for delays in the prosecution of the work, the principal source of delays was that of its subcontractor, CROUSE." They also found that, although Cranston's actions accounted for some of the delays, Crouse was not entitled to compensation from Cranston for delays because most of Crouse's delays were self-generated.

With regard to the subcontractors' claims, the arbitrators noted that the subcontracts contained the following clause:

"Section 6. The Subcontractor agrees that he shall have no claim for money damages or additional compensation for delay no matter how caused, but for any delay or increase in the time required for performance of this subcontract not due to the fault of the Subcontractor, he shall be entitled only to such extension of time for performance of his work as shall be allowed to the Contractor or by the Contractor."

The arbitrators also quoted the following provision, which was part of the "terms and conditions" of the subcontracts:

"18. The Contractor agrees to allow the Subcontractor to use the Contractor's name in procedures set up in the general contract or provided by law for the prosecution of any claims for additional compensation for any work done pursuant to the direction of the Architect or Owner. The Contractor further agrees on reasonable notice to include any claims of the Subcontractor in any action against the Owner. The Subcontractor agrees to be bound by the results of any arbitration, litigation or administrative proceedings in the same manner that the Contractor is bound by such results."

The arbitrators also cited the *Severin* doctrine. In *Severin v. United States*, 99 Ct.Cl. 435 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944), the United States Court of Claims held that a prime construction contractor with the federal government could not recover from the government a subcontractor's damages for government-caused delays when the subcontractor had agreed not to hold the prime contractor liable for such delays. 99 Ct.Cl. at 440–44. One commentator has explained this doctrine as "requiring a prime contractor's liability to the subcontractor as a condition of recovery against the government in a representative suit * * *." *See* Henry R. Kates, Note, *Facilitating Subcontractors' Claims Against the Government Through the Prime Contractor as the Real Party in Interest*, 52 Geo. Wash.L.Rev. 146, 151 (1983).

The arbitrators noted that courts have interpreted the doctrine to "permit a prime to sue on behalf of [its] subcontractor only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future." They concluded that the *Severin* doctrine applied and determined that "the exculpatory clause in the subcontracts is clear and sufficiently specific to bar such delay claims." Therefore, they concluded, Audet and the other "subcontractors" (other than Crouse and Steel) were barred from asserting delay claims and were not entitled to delay damages.

As for Steel's claims, the arbitrators determined that Steel was entitled to compensation for costs incurred as a result of delay. Because Steel had provided metals for the project under a purchase order, not a subcontract, Steel had not agreed to waive claims for delay damages as had Audet.

The arbitrators issued the following award: Crouse was to pay Westcott $384,800, and Westcott was to pay Cranston $314,000 and Steel $8,000; additionally, Cranston was to pay Westcott $117,600. Therefore, Westcott received a net amount of $180,400, Cranston received a net amount of $196,400, and Steel received a net amount of $8,000. The arbitrators issued their findings and award in April 1989.

In October 1989, Audet and Steel filed their complaint in this civil action against Firemen's as Crouse's surety. Audet, Steel, and Firemen's proceeded with discovery and other aspects of the lawsuit. In 1991, this court affirmed the judgment of the Superior Court confirming the 1989 arbitration award. *See Westcott Construction Corp. v. City of Cranston,* 586 A.2d 542, 542–43 (R.I.1991). In September 1992, the Superior Court motion justice granted Firemen's motion for summary judgment and denied Audet and Steel's motion for summary judgment. After a Superior Court justice had entered final judgment, Audet and Steel appealed to this court.

Audet and Steel base their challenge to the granting of Firemen's motion for summary judgment and the denial of their motion for summary judgment on two legal issues. They claim that the Superior Court justice erred in making the following rulings: (1) that the arbitration precluded Audet and Steel from asserting delay claims against Crouse's bond and (2) that Audet and Steel were not third-party beneficiaries of the contract between Westcott and Crouse and were not entitled to benefit from Crouse's bond.

When reviewing the granting or the denial of a motion for summary judgment, this court applies the same analysis that the motion justice applied. *See Barratt v. Burlingham,* 492 A.2d 1219, 1220 (R.I.1985). Rule 56(c) of the Superior Court Rules of Civil Procedure provides that, following a hearing on a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Our review includes examining the pleadings and affidavits in a light most favorable to the party opposing the motion. *Barratt,* 492 A.2d at 1220. We shall uphold the Superior Court's order granting summary judgment "[o]nly when our review reveals no issues of material fact, and the moving party is entitled to judgment as a matter of law * * *." *Id.*

Our review of the record reveals no genuine issue of material fact. None of the parties argued in any of the summary-judgment documents or at the hearing on the motions for summary judgment that an issue of material fact existed. Additionally, the parties' statements of facts in their briefs do not reveal or identify disputes regarding issues of material fact. Moreover, although hardly dispositive of this issue, the fact that both sides filed motions for summary judgment lends support to the motion that no issue of material fact remains to be resolved. Thus we determine that no genuine issue of material fact exists, and we now turn to the question whether plaintiffs are entitled to judgment as a matter of law.

The plaintiffs claim that the Superior Court justice erred in ruling that the arbitration precluded Audet and Steel from asserting delay claims against Crouse's bond. At the hearing on the parties' motions for summary judgment, the motion justice noted that, under the contracts, the claims of the "subcontractors" were included in Westcott's claim against Cranston. He stated that it appeared that the arbitrators had considered the claims of Audet and Steel. He concluded that collateral estoppel applied against Audet and Steel "because their rights were all considered by the arbitrators."

Although Audet and Steel argue that the arbitration precludes Firemen's (and Crouse) from relitigating the issue of whether Crouse delayed the project, Audet and Steel claim that the arbitration does not preclude them from asserting claims on Crouse's bond. Audet and Steel contend that the Superior Court justice's findings that their claims against Crouse were decided in the arbitration and that they had an opportunity to litigate the issue of liability against Crouse at the arbitration lack support in the record. The only findings of the arbitrators relevant to this action, Audet and Steel claim, relate to Westcott's and Cranston's liability to each other; the arbitrators reached no conclusion regarding Crouse's direct liability to Audet or Steel.

Firemen's contends that plaintiffs are precluded by the doctrines of res judicata and collateral estoppel from relitigating the issue

of Crouse's liability and from bringing a claim against Crouse's bond. Firemen's also argues that the arbitrators were appointed to hear Westcott's and Cranston's reciprocal breach-of-contract claims and that the arbitrators considered the claims of Westcott's subcontractors and/or suppliers, including those of Audet, Crouse, and Steel, and conclusively determined the liability of all parties engaged in the project. Specifically, Firemen's claims that Audet was a party to the arbitration and is bound by the arbitrators' determination that its delay claims were barred by the terms of its subcontract. Firemen's asserts that Steel's rights were fully determined at the arbitration as well and that Steel should also be precluded under collateral estoppel from relitigating the issues of Crouse's delay and the extent of resulting delay damages.

Because this section of our opinion involves complicated legal issues and their application to different parties, we shall undertake a methodical step-by-step analysis. At the outset, it is important to distinguish between the related doctrines of res judicata and collateral estoppel because the parties make reference to both. We note that these are complicated legal issues that are not susceptible of simple explanations.

 The doctrine of res judicata relates to the effect of a final judgment between the parties to an action and those in privity with those parties. *Providence Teachers Union, Local 958—American Federation of Teachers, AFL–CIO v. McGovern,* 113 R.I. 169, 172, 319 A.2d 358, 361 (1974). Usually asserted in a subsequent action based upon the same claim or demand, the doctrine precludes the relitigation of all the issues that were tried or might have been tried in the original suit. *Id.* As we have stated, the doctrine of res judicata operates as an absolute bar to a subsequent cause of action when there exist the following: (1) identity of parties, (2) identity of issues, and (3) finality of judgment in an earlier action. *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993). When res judicata is invoked, it renders the original judgment conclusive with respect to any issues that were·raised or that could have been raised. *Rhode Island Student*

*Loan Authority v. NELS, Inc.,* 600 A.2d 717, 720 (R.I.1991).

 The doctrine of collateral estoppel makes conclusive in a later action on a different claim the determination of issues that were actually litigated in a prior action. *Providence Teachers,* 113 R.I. at 172, 319 A.2d at 361. As the United States Supreme Court has explained, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). As we have stated, the requirements are (1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding. *State v. Chase,* 588 A.2d 120, 122 (R.I.1991) (citing *Providence Teachers,* 113 R.I. at 172, 319 A.2d at 361). We have subdivided the first requirement, identity of issues, into three factors: (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided. *See Chase,* 588 A.2d at 123 (citing *Lucido v. Superior Court,* 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 769, 795 P.2d 1223, 1225 (1990)). For a more comprehensive treatment of the general principles of res judicata and collateral estoppel, see, for example, 1 Restatement (Second) *Judgments* §§ 1–29, 34–42 at 1–101, 343–416 (1982); 2 Restatement (Second) *Judgments* §§ 43–63 at 1–136 (1982).

 We first determine whether plaintiffs' claims against Firemen's are barred by the doctrine of res judicata. The first element that we examine is whether the parties to this second action are identical to or in privity with the parties involved in the arbitration. *See Providence Teachers,* 113 R.I. at 172, 319 A.2d at 361; *Gaudreau,* 618 A.2d at 1275. A party to an action has been defined as "[a] person who is named as a party to an action and subjected to the jurisdiction of the

court * * *." 1 Restatement (Second) *Judgments* § 34(1) at 345. In a comment, the Restatement states that "parties may subject themselves to the court's jurisdiction by making an appearance or participating in the action in a manner that has the effect of an appearance." *Id.* at comment *a.* Because we are considering whether certain entities were parties to an arbitration proceeding rather than to a proceeding in court, we analogize the two types of proceedings for this narrow purpose.

At least for purposes of res judicata or collateral estoppel, Audet and Steel were parties to the arbitration. They submitted claims for costs associated with the delays in construction. We are persuaded that this action constitutes making an appearance or at least having the effect of an appearance. We note that in Westcott's motion for reconsideration and modification of the arbitrators' decision Westcott stated that at the initial arbitration hearing the parties had agreed "that all matters between Cranston, Westcott, Crouse and the other subcontractors would be decided * * *." Perhaps plaintiffs phrased it best. In their complaint they stated that "the arbitrators considered certain delay claims of Westcott and various subcontractors including the Plaintiffs herein."

With regard to Audet, section 8 of the subcontract that Audet executed with Westcott provides that "[e]xcept for such claims as are governed by paragraph 18 of the terms and conditions of this subcontract, any disputes arising out of or relating to this subcontract or the breach thereof shall be referred to arbitration * * *." The second sentence of paragraph 18, quoted above, is most relevant here. Under it, Westcott agreed "on reasonable notice to include any claims of the Subcontractor in any action against the Owner." According to the arbitrators' decision, Audet's claim would have been "passed through" and presented by the prime contractor, Westcott, if Audet had not waived its claims for delay damages. Audet's claim was considered by the arbitrators to the extent that they concluded that Audet had waived its claim for delay damages by the terms of its subcontract. Therefore, for purposes of res judicata and collateral estoppel, Audet was a party to the arbitration.

■ For purposes of res judicata and collateral estoppel, Steel was also a party to the arbitration for similar reasons. The arbitrators found "that there was a delay by WESTCOTT/CROUSE in providing the necessary direction for fabrication of the steel." Steel even benefited by an award of $8,000 to be paid by Crouse through Westcott. Steel never objected to this award on the ground that it was not a party to the arbitration. Steel's claim for delay damages was fully considered and determined by the arbitrators.

■ Although we do find from our analysis that Audet and Steel were parties to the arbitration proceeding, if we did not, they would still be bound by the judgment in the arbitration because they were in privity with an entity that unquestionably was a party, namely, Westcott. *See Providence Teachers,* 113 R.I. at 172, 319 A.2d at 361. The defendant is also in privity with an entity that was a party to the arbitration, Crouse. We note that "the surety's liability under the performance bond is generally coextensive with that of its principal." Kevin L. Lybeck, *Scope of the Performance Bond Surety's Obligation, in The Law of Suretyship,* ch. 10 at 10-1 (Gallagher ed. 1993); *see also* Barry B. Bramble & Michael T. Callahan, *Construction Delay Claims* § 15.3 at 530 (2d ed. 1992). Additionally, a surety generally has the right to assert any defenses that would be available to the principal. *See* Lybeck, at 10-1. We conclude that if Crouse could assert res judicata as a defense, so could Firemen's.

■ The second element is the identity of the issues. *See Gaudreau,* 618 A.2d at 1275. Because plaintiffs seek to preclude defendant from relitigating the issue of whether Crouse caused delays in the project, they appear to concede that this is an issue in both this lawsuit and the arbitration. They argue that, as Crouse's surety, Firemen's cannot relitigate that issue. In a perhaps bizarre twist, plaintiffs also contend that they are not precluded from claiming on the performance bond because the arbitrators made no findings of fact or conclusions of law regarding

Crouse's direct liability to Audet and Steel. This is not the standard nor is this dispositive. The arbitrators did find that as the general contractor Westcott was responsible for delays in the work but that the main source of delays was actually Crouse. The plaintiffs' claim depends on Crouse's liability for delays.

■ With respect to Audet in particular, by the terms of its subcontract with Westcott it agreed to be bound by the arbitration just as Westcott was bound. We then inquire whether Westcott could assert a claim against Firemen's in a second action. We are convinced that Westcott is bound by res judicata and could not assert a claim against Firemen's. We therefore conclude that Audet is similarly precluded.

■ With respect to Steel, the same issues were considered in the arbitration regarding Crouse's causation of and liability for delay. Steel already recovered on these issues, unlike Audet. Because the extent of Firemen's liability is equal to that of Crouse, Steel cannot reassert these issues in this lawsuit.

■ Finally, we address the third element of res judicata, the finality of the judgment in the prior proceeding. *See Gaudreau*, 618 A.2d at 1275. This court has held that when an arbitration award is confirmed by the Superior Court, it is equivalent to a final judgment in an action at law. *Mulholland Construction Co. v. Lee Pare & Associates, Inc.*, 576 A.2d 1236, 1237 (R.I.1990); *see also* G.L.1956 (1990 Reenactment) §§ 37–16–17, 37–16–22, and 37–16–24. The Superior Court did confirm the arbitration award; subsequently, this court affirmed that confirmation. *See Westcott*, 586 A.2d at 542–43. Thus, the third element of res judicata is satisfied.

We therefore conclude that the doctrine of res judicata bars the plaintiffs from asserting their claim against Firemen's in this action. Hence, we do not reach the issue of collateral estoppel or the third-party-beneficiary issue raised by the plaintiffs.

Consequently, the plaintiffs' appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.

FAY, C.J., did not participate.