DECISION
This is an appeal from a final decision of the Employees' Retirement System for the State of Rhode Island dated March 8, 1995. Jurisdiction in this Superior Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
Antonio J. Craveiro (plaintiff) was employed as a tailor for the Rhode Island State Police. The plaintiff worked in that capacity from September of 1982 through August 1, 1986, when he allegedly injured his hand and wrist during the course of his employment. On August 1, 1986, the plaintiff filed an accident report claiming he felt a sharp pain and numbness in his hand and wrist as he was cutting departmental uniforms with scissors. (See Plaintiff's Exhibit A.) Three days after this incident the situation improved, and the plaintiff returned to work. On May 28, 1991, the plaintiff filed another accident report claiming to have reaggravated the earlier injury. (See Plaintiff's Exhibit B.) He noted that the injury had been bothering him for approximately six weeks, and he indicated that he had visited two physicians.
The plaintiff was diagnosed by Dr. A. Robert Buonnano as suffering from bilateral carpal tunnel syndrome. On May 19, 1992, the plaintiff underwent a surgical procedure called right carpal tunnel release. The plaintiff maintains he never felt any improvement following the procedure, and he has remained out of work since that time. The plaintiff has been collecting and continues to collect worker's compensation benefits from the State of Rhode Island.
As a result of this injury, the plaintiff on September 27, 1993, filed an application to receive an accidental disability pension with the Employees' Retirement System for the State of Rhode Island. On November 22, 1993, the Retirement System informed the plaintiff that his application would not be processed since he did not meet the requirements under R.I.G.L. 1956 (1990 Reenactment) § 36-10-14, to qualify for an accidental disability pension. (See Plaintiff's Exhibit A.)
R.I.G.L. § 36-10-14 entitled "Retirement for Accidental Disability" states as follows:
 (a) Medical examination of an active member for accidental disability, and investigation of all statements and certificates by him or her or in his or her behalf in connection therewith, shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired.
 (b) Such application shall be made within five (5) years of the alleged accident from which the injury has resulted in the member's present disability, and shall be accompanied by an accident report and a physicians report certifying to the disability; provided, that, if the member was able to return to his or her employment and subsequently re-injures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged accident or three (3) years of the re-injury or aggravation.
 (c) If a medical examination conducted by three (3) physicians engaged by the retirement board, and such investigation as the retirement board may desire to make, shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability, and the retirement board may grant the member an accidental disability benefit.
 (d) The retirement board shall establish uniform eligibility requirements, standards and criteria for accidental disability which shall apply to all members who made application for accidental disability benefits.
The plaintiff appealed the Retirement System's decision not to process his application to the Executive Director of the Retirement System, Joann Flamino. By letter dated December 28, 1993, Ms. Flamino again informed the plaintiff that Retirement System would not process his application. Ms. Flamino indicated that the plaintiff "has not satisfactorily met burden of establishing that a specific accident or injury took place." (Plaintiff's Exhibit J.) She also maintained that "it is not clear that plaintiff's condition is not the result of age or length or service as a tailor for the State Police." (Id.)
The plaintiff filed a notice of appeal pursuant to Rule V, Section 3 of the Rules and Regulations of the State of Rhode Island, Employees' Retirement System. On March 9, 1994, after a review of all documents and testimony, the Retirement Board (Board) voted unanimously to refer plaintiff's application to its Disability Subcommittee for review and recommendation.
The Subcommittee, based on the medical reports of the three independent physicians hired by the Board pursuant to R.I.G.L. § 36-10-14 (c), recommended to deny the plaintiff's application. Dr. Richard J. Zienowicz examined the plaintiff and concluded,
 "I do not believe that the patient had a single accident leading to this problem. This is a cumulative trauma disorder sustained by chronic repetitive types of work which the patient certainly was involved in. I believe disability is the result of both age and length of service on the job." (Defendant's Exhibit 9.)
Dr. Arnold — Peter C. Weiss after examining the plaintiff indicated that,
 "patient appears to have had an acute injury at work on August 1, 1986. In my opinion it is however more likely than not, that the patient's bilateral carpal tunnel syndrome and bilateral epicondylitis were a direct result of the work activities he undertook over a prolonged period of time rather than directly related to the incident in question." (Defendant's Exhibit 10.)
Dr. Edward Feldmann examined the plaintiff and determined that he was ". . . unable to conclude that his impairment is clearly due to an occupational injury." (Defendant's Exhibit 11.) The subcommittee decided that the plaintiff may in fact be disabled, however, they concluded that the plaintiff had not met the burden of establishing the August 1, 1986 incident as the causation of the disability, as is required by R.I.G.L. § 36-10-14.
At its December 14, 1994 meeting, the Board voted to accept the recommendation of its Subcommittee to deny the plaintiff's application. The Board voted to deny the plaintiff's application for the following reason:
 "Rhode Island General Law requires that in order to be considered eligible for an accidental disability, the member must show that his disability is a result of an injury sustained while in the performance of duty and not the result of age or length of service." (Plaintiff's Exhibit M.)
The plaintiff appealed the December 14, 1994 decision of the Board. At the March 8, 1995 Board meeting, the plaintiff challenged the reports of the independent medical examiners. He maintained that he met the requirements of Accidental Disability Retirement pursuant to R.I.G.L. § 36-10-14. The Board once again unanimously voted to accept the recommendation of the Subcommittee to deny the plaintiff's application.
It is from that decision that this appeal followed.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand v. Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
The Evidence before the Board
The plaintiff maintains on appeal that the application he filed with the Retirement Board clearly establishes that his disability occurred while he was performing his employment duties, and that said application further certified the definite time, place and conditions of the duty being performed which resulted in his disability. The Board decided that even if it accepts that the plaintiff is disabled from the performance of his job as a tailor, this does not qualify him for an accidental disability pension. Pursuant to R.I.G.L. § 36-10-14, the plaintiff must prove that his disability is " . . . the natural and proximate result of an accident while in the performance of duty . . . and not the result of age or length of service . . ." The Board determined that the plaintiff's injury developed over a period of time and was not caused by a single accident or event.
The evidence clearly demonstrates that the plaintiff is suffering from a disability. The plaintiff's physicians and the independent physicians retained by the Board are all in agreement that the plaintiff suffers from bilateral carpal tunnel syndrome. Furthermore, the evidence presented supports the plaintiff's contention he was injured while performing his duties as a tailor. Plaintiff's physician, Dr. Buonnano, states in his July 18, 1991 medical report, that "his work as a tailor, which requires repetitive use of scissors, was the probable cause of his disability." (Plaintiff's Exhibit C.) Dr. Gary A. L'Europa indicates in his August 6, 1991 correspondence that, "in my opinion and to a reasonable degree of medical certainty, the carpal tunnel syndrome would be work related." (Plaintiff's Exhibit C.) Additionally, two of the three independent physicians retained by the Board acknowledge that the plaintiff's injury is related to his work activities. (See Defendant's Exhibits 9, 10.)
The evidence presented, however, supports the Board's position that the injury developed over a period of time and was not the result of a single incident. As stated above, Dr. Buonnano believes the repetitive use of scissors was the cause of injury. All three independent physicians retained by the Board, felt the injury was not the result of any single accident. Dr. Zienowicz indicated that he believed the injury was a cumulative trauma caused by repetitive types of work. (See Defendant's Exhibit 9.) Dr. Weiss's opinion was that plaintiff's injury was the result of activities undertaken over a period of time. (See Defendant's Exhibit 10.) Dr. Feldmann was not even convinced the impairment was due to an occupational injury. (See Defendant's Exhibit 11.) Only physician Dr. Lee E. Edstrom concludes that plaintiff's injury may have been the result of a single accident. In his July 26, 1994 examination report, he states that the cause of injury "is difficult to tell, although the initial incident for this entire complicated picture is a work-related injury with a scissors in 1986." (Plaintiff's Exhibit P.)
R.I.G.L. § 36-10-14 states that " . . . the [three independent] physicians who conducted the examination shall so certify to the retirement board stating the time, place and conditions of service performed by the member resulting in the disability, and the retirement board may grant the member an accidental disability benefit." (Emphasis added.) In the instant matter, the Board clearly did not have before it, three independent physicians certifying to it a time, place and conditions of service performed by the plaintiff which resulted in the disability. Accordingly, the Board's decision to deny the accidental disability benefit is supported by substantial evidence of record.
The plaintiff next argues that since he has been collecting worker's compensation benefits form the State of Rhode Island, that the doctrine of res judicata and collateral estoppel bar the Board's denial of his application. The plaintiff's contention is that the State of Rhode Island by and through its Employees' Retirement System cannot now revisit the facts and circumstances which have already been adjudicated by a court of competent jurisdiction. He indicates that the Worker's Compensation Commission determined that his injury occurred during his period of employment.
The fact that the Worker's Compensation Commission determined that the plaintiff's injury occurred during his period of employment, however, is not dispositive concerning the issue of accidental disability pursuant to R.I.G.L. § 36-10-14. The standard a person must meet to be eligible for worker's compensation is separate and distinct from the standard a person must meet to be eligible for an accidental disability from the Retirement System. Eligibility for worker's compensation is governed by R.I.G.L. § 28-33-1, which grants compensation to an employee who ". . . receives a personal injury arising out of and in the course of employment . . ." The more restrictive language of R.I.G.L. § 36-10-14 concerning an accidental disability, requires that the disability be the ". . . natural and proximate result of an accident while in the performance of duty . . . and not the result of age or length of service . . ." Therefore, a person could possibly be eligible to receive worker's compensation benefits but not be eligible to receive an accidental disability pension.
Rhode Island's doctrine of res judicata states that a final judgment on the merits precludes later litigation of the same claim by the same parties. See E.W. Audet and Sons, Inc. v.Fireman's Fund Insurance Company of Newark, New Jersey,635 A.2d 1181 (R.I. 1994). Collateral estoppel bars litigation of an issue, when that issue has been determined by a valid and final judgment. See State v. Chase, 588 A.2d 120 (R.I. 1991). The record indicates that there has not been a final judgment concerning either the claim or issue in the instant proceeding. The Worker's Compensation Commission never decided whether the plaintiff was eligible to receive an accidental disability under the Retirement System, nor did it determine if the plaintiff's injury was the result of a single accident while in the performance of duty and not the result of age or length of service. Consequently, the doctrines of res judicata and collateral estoppel do not bar the Board's denial of plaintiff's application for an accidental disability.
The Court in its review of the decision from the State Retirement Board finds nothing therein which is in violation of constitutional or statutory provisions; finds nothing to suggest that the Retirement Board acted in excess of authority granted to it by law; finds that the Retirement Board's procedure was lawful and that their decision is not affected by error of law. The Court further finds that the Retirement Board's decision is not clearly erroneous in view of the reliable, probative, and substantial evidence presented; is not arbitrary or capricious, and, is not characterized by any abuse of discretion by the Board.
Accordingly, the decision of the Employees' Retirement System for the State of Rhode Island is hereby affirmed.
Counsel shall prepare the appropriate judgment for entry.