DECISION
On January 6, 1995, the plaintiffs, residents in Tuckertown Village and the Tuckertown Homeowners Association, filed a complaint against the defendant alleging improper rental increases, attempts to unilaterally alter the terms of plaintiffs' leases, reprisal, failure to comply with Rhode Island General Laws, contempt, and willful disregard of a previous judgment of this Court. The plaintiffs seek injunctive relief preventing the defendant from revoking the existing leases, damages and relief pursuant to the reprisal statute (G.L. §31-44-5), and attorney's fees.
Pursuant to Rule 65 (a)(2), the Court hereby consolidates the plaintiffs' request for injunctive relief with the trial on the merits.
 Facts/Travel
Tuckertown Village is a mobile home development situated in South Kingstown, Rhode Island. The park is divided into three separate sections designated as Phase I, Phase II, and Phase IIA. The plaintiffs are residents in various phases in Tuckertown Village and have entered into lease agreements with the defendant, Tuckertown Village Association.
In 1992, many of the same plaintiffs filed suit against the defendant alleging that Tuckertown Village Association unlawfully raised their rents by implementing and applying a nonuniform rental increase methodology that was inconsistent with the General Laws of Rhode Island. Marjorie Baker et al., v. R.I.Mobile and Manuf. Home Comm. and Tuckertown Village Assoc., C.A. No. 92-0326. The plaintiffs prevailed before Justice Famigletti, and the matter became final when application for certiorari was denied by the Rhode Island Supreme Court. Order, No. 94-230 M.P., Sept. 8, 1994.
In response to the outcome in Baker, the defendant notified plaintiffs of a new modified lease resulting in an increase in rent, approximately $40.00 per month, per unit. See, Letter of October 31, 1994. On January 6, 1995, the plaintiffs filed the present suit challenging these rental increases. The dispute was ordered to arbitration by Justice Famigletti, and the defendant was temporarily enjoined from raising the rents.[1] See Order of J. Famigletti, July 25, 1995. However, the plaintiffs, in their motion for reconsideration, asserted that arbitration was not in order because they made no claim of excessive rent pursuant to G.L. 31-44.1-2, only reprisal. See, American Arbitration Association, Position Statement of Ruth LeBlanc, et al., Plaintiff's Motion for Reconsideration, December 14, 1995.
The Court then entered a subsequent order on January 26, 1996, granting the plaintiffs' motion for reconsideration, which withdrew and reversed the prior order directing arbitration, and removed the previous injunction against the defendant from raising rent. See, Order of J. Famigletti.
In subsequent letters to the residents of Tuckertown Village, the defendant has attempted to institute a uniform rental increase lease form. The plaintiffs continue to object and many have not paid any rental increases to the defendant.[2]
The plaintiffs allege that the increase is an attempt to unilaterally revoke the present terms of the contract with terms that are more favorable to the defendant. The plaintiffs further contend that the defendant's conduct is inconsistent with the prior ruling of this Court and in violation of the existing contractual relationship. Plaintiffs therefore pray that this Court grant injunctive relief to prevent the defendant from revoking the leases, as well as damages and attorney's fees.
This Court is mindful of the extended nature of these proceedings and the enduring commitment of the residents involved in this dispute. While remaining sympathetic to the concerns of the residents, the Court has carefully weighed all applicable evidence and law, and has made its decision accordingly.
 Reprisal
Plaintiffs first argue that the conduct of the defendant in changing the terms of the contract, constitutes reprisal pursuant to G.L. § 31-44-5. Specifically, the plaintiffs maintain that the lease agreement, and the terms therein, renew automatically, unless certain events occur, namely, breach. There being no breach on behalf of the plaintiffs, the plaintiffs argue that the defendant must therefore renew the lease agreement inclusive of the present terms.[3] The failure to do so, by implementing new leases that increased the rent, constitutes reprisal.
The defendant avers that G.L. § 33-44-3 (6) specifically provides that rent may be changed upon 60 days notice. See also
G.L. § 31-44-1.2. The defendant further asserts that the decision in Baker compelled the defendant to reform the leases to provide for uniform application of rental increases, and as such, the reformed leases do not constitute reprisal.
The defendant also contends that the plaintiffs have failed to present any evidence that the notice of the reformed leases occurred within 6 months after the resident(s) had taken any protected lawful action. Additionally, the defendant argues that because the residents of Phase I were not parties to the Baker
decision, they cannot be deemed to have undertaken any prior "lawfully protected action."[4]
Reprisal is defined as "any act taken against the resident(s) which is intended as a penalty for any protected lawful action taken by the resident(s)." G.L. § 31-44-1(n). Statutory relief from reprisal is granted by G.L. § 31-44-5 which states:
 "(a) No licensee shall take reprisal(s) against a resident or prospective resident.
 (b) An increase in rent, nonrenewal of lease, refusal to offer a lease, or termination of tenancy, taken by a licensee against a resident or prospective resident has taken any protected lawful action, shall create a rebuttable presumption that the act by the licensee is a reprisal. Reprisal may be pleaded as a defense in any court proceeding brought against a resident or prospective resident after he or she has taken any protected lawful action.
 (c) In addition to any other remedy under this chapter, a resident or prospective resident who has been the subject of reprisal shall be entitled to the remedies provided for retaliatory actions in § 34-18-46".[5]
The first element in establishing a rebuttable presumption for reprisal, is either an increase in rent, non-renewal, refusal to offer a lease, or termination of tenancy. In the present matter, the defendant has proposed a newly revised lease, inclusive of a uniform system of rental increases. As a result of the new lease, rent has increased approximately $40.00 per month, per unit. The first element is therefore satisfied.
The second element requires that action be taken by the licensee against a resident or prospective resident. As noted earlier, the defendant contends that the Homeowners Association is unable to pursue relief under the reprisal statute because it is not a "resident or prospective resident" as provided by statute.[6]
Because this Court finds that Homeowners Association is an entity, it does not fall within the definition of "resident or prospective resident" within the meaning of the statute. As a result, the Homeowners Association is unable to pursue relief under this statute. With respect to all other named parties, however, it is undisputed that each of the plaintiffs, was at one time, or is presently, a resident affected by the rental increases.
The third element in forming the rebuttable presumption requires that the action be taken within a 6 month time period after the resident or prospective resident has taken any protected lawful action. Protected lawful action is defined in G.L. § 31-44-1(m) as "any report or violation of this chapter, or of any applicable building or health code, or any justified complaint to a governmental authority or any other justified lawful act by the resident(s) or prospective resident(s)". Through the use of the words "report," "complaint," or "act," the language in the statute implies that "action" refers to when a complaint, report, or act is first made and not necessarily when judgment or ultimate enforcement is received or imposed.
Because the letter informing the residents of the new leases was dated October 31, 1994, any "protected lawful action" taken by the plaintiffs that could form the basis for the defendant's retaliation, must have occurred within the previous 6 month period starting April 31, 1994.
There are two matters in the present case that could be considered protected lawful action: the original complaint ofBaker, C.A. No. 92-0326, alleging a non-uniform system of rental increases, filed June 12, 1992; or another action entitled Baker,
C.A. No. 92-0064, seeking injunctive relief from eviction, filed December 31, 1992[7] Only a limited number of plaintiffs alleging reprisal in the present action participated in the past actions against Tuckertown. As a result, not all parties have engaged in "protected lawful action" pursuant to the statute.[8]
Using the date of the filing of the actions as the date of the commencement of the six month time period, the notice occurred well after the six month time period had expired. Even if this Court were to commence the time limitation from the issuance of Justice Famigletti's decision in March 1994, the notice of new leases occurred after the six month period had expired. As a result, the plaintiffs have failed to establish the rebuttable presumption that action taken by the defendant constituted reprisal.
Yet, even if a rebuttable presumption were established, it is most strongly overcome due to the very nature of the rental increases and the absence of facts indicating the new leases constituted retaliation by Tuckertown Village. Specifically, this Court finds that the action taken by Tuckertown Village was remedial in nature and at the direction of the Court in Justice Famigletti's decision striking down the improper rent methodology. The evidence reveals, and this Court further determines, that the rental increases were ancillary to the institution of a modified, more uniform lease agreement for all residents, regardless of their participation in prior suits.
 Collateral Estoppel
Plaintiffs next assert that the defendant is collaterally estopped from raising rent other than by the methodology in Phase I. Specifically, the plaintiffs aver that the previous judgment in Baker delineated that the amounts presently sought in this action are illegal.
The defendant contends that the decision in Baker held that there should not be different terms for annual rent increases. As such, the decision essentially directed the defendant to reform the leases to provide for uniform rental increases in compliance with Rhode Island General Laws. Defendant argues that the plaintiffs seek to have the defendant adhere to the present rental provisions of Phase I in perpetuity and apply those terms to the other Phases in the development.
Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." E.W. Audet Sons v. Fireman'sFund Ins., 635 A.2d 1181, 1186 (R.I. 1994) (quoting Ashe v.Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970)). The requirements are "(1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding." Id.
The first requirement can be divided into three sub-requirements: "(1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided." Id. See also, State v. Hie, 688 A.2d 283 (R.I. 1997).
The first element of collateral estoppel is the identity of the issues. Justice Famigletti's decision in Baker clearly delineates the former issue: ". . . what the plaintiffs do dispute . . . is the legality of having differing methods of rent increases for residents of similar class."[9] Baker, WC92-0326, Decision, at p. 10. In their appeal of the hearing officer's decision, the Court analyzed and addressed the methodology of the rent structure pursuant to G.L. § 31-44-3 (3) and the creation of different "classes" to support a non-uniform rent increase. (Emphasis added). Id. at 6-7. Additionally, the Court suggested alternative methods to recapture various expenses without "setting different methods for increasing rents for residents who are similar in class." Id. at 8.
This Court finds that the legality of the method of rental increase, the key issue in Baker, is not at issue in the present matter. Rather, the plaintiffs' allegations turn on the defendant's failure to renew the terms of their present leases, which they allege, constitutes reprisal. The uniformity of the methodology, has neither been questioned, nor raised by either party. As a result, the Court need not consider the remaining elements of collateral estoppel because the identity of issues does not exist.
As the Court has decided this matter on the issues of reprisal and collateral estoppel, the Court need not address additional arguments of counsel regarding the inclusion of certain parties, or the plaintiffs' claims of contempt. The plaintiffs' prayer for injunctive relief is denied in light of this Court's decision, supra.
Counsel shall prepare an order for entry in accordance with this decision.
[1] G.L. 31-44.1-2 entitled "Rent increases for mobile and manufactured home lots" provides that if a majority of the mobile home owners of the park believe that the rent increase is "clearly excessive," arbitration may be requested.
[2] One of the arguments propounded by the defendant is that some of the plaintiffs named in this action have already executed the new lease agreement or have paid rent pursuant to the new leases and thus any claims pertaining to these residents should be dismissed.
[3] The pertinent terms in Section 16 of the lease agreements for Phase I stated that the lease would be automatically renewed for an additional term unless the tenant was in default. All the terms and conditions for the first year would also be applicable to the renewal years. Rental increases for each renewal year were determined pursuant to the Consumer Price Index.
[4] The defendant also asserts that the Homeowners Association is not a proper party to this action because, as an entity, it does not qualify as a "resident or potential resident" within the meaning of the statute. The defendant's contention is addressedinfra.
[5] G.L. § 34-18-46 falls under Residential Landlord and Tenant Act this section prohibits retaliatory conduct by the landlord as a result of a tenant's complaints or pursuit of lawful rights or remedies.
[6] The defendant also disputes the inclusion of certain parties to this action, claiming that they have either moved away, signed the new leases, are paying rents under the new leases, or are deceased. However, all named individuals were or are residents of Tuckertown Village.
[7] As of the time of the writing of this decision, no action has taken place in this matter, and the claims have not been pursued.
[8] Of the plaintiffs involved in WC 92-0064, the following plaintiffs are parties in the present action: Celia Grimes, Roger Grimes, Margaret Huykman, William Huykman, Joan McClaren, Esther Penston, Robert Penston, Theresa Ramieri, and Anthony Ramieri.
Of the plaintiffs involved in WC 92-0326, the following plaintiffs are parties in the present action: Celia Grimes, Roger Grimes, Margaret Hilton, Margaret Huykman, William Huykman, Joseph Netsel, Anna Netsel, Robert Penston, Esther Penston, Theresa Ramieri, Anthony Ramieri, Robert Sweeney, Marguerite Sweeney, Donald Yeager, and Myrtle Holt.
[9] Justice Famigletti's decision also addressed the impropriety and bias of the hearing officer and his creation of different "classes" to justify the differing rental methodology. This issue of bias is irrelevant in the Court's consideration of collateral estoppel with regard to this action.