William D. ANKNER et al.

v.

Stephen NAPOLITANO et al.

No. 00–148–Appeal.

Supreme Court of Rhode Island.

Jan. 8, 2001.

Joseph S. Larisa, Jr.; Sheldon White-house, Providence; Claire J. Richards; James R. Lee, Eugene Coulter, Providence, for Plaintiff.

Gerald John Petros, Joseph D. Whelan; Richard G. Riendeau, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

OPINION

**FLANDERS, Justice.**

This is the latest skirmish in the long-raging condemnation battle between Capital Properties, Inc. (CPI), the State of Rhode Island (state), and the City of Providence (city). Because our prior published opinions have chronicled the history of this protracted conflict,[1] we will not recap it here, except as needed to address the issues presented by this appeal.

On December 20, 1999, we issued an order, a copy of which is appended hereto, that remanded this case to the Superior Court. The purpose of the remand was to enable CPI and the state to present their respective contentions to the Superior Court concerning the state's alleged breach of its 1987 agreement with CPI and the state's post-judgment efforts to correct the interest rate that was used to calculate the total condemnation award in favor of CPI. On March 24, 2000, the Superior Court issued a decision on the parties' cross-motions for summary judgment. It concluded, among other things, that CPI's 1987 agreement to credit the state with a sum equal to a 50 percent share of the "total condemnation proceeds awarded" to CPI did not include an interest component, but was limited to the principal portion of CPI's 1997 condemnation award. The court also ruled that the state's attempt to modify the judgment to include a variable United States Treasury bill rate of interest on the condemnation award—instead of the 12 percent per annum rate used in the judgment—was untimely and, therefore, it was not properly before the court. The state has challenged these rulings on appeal. After considering the parties' arguments, we reverse and direct the Superior Court to enter an amended judgment in favor of the state on each of the two points discussed below.

**I**

**"Total Condemnation Proceeds Awarded" Included Interest**

■ On December 20, 1999, we ordered the state to pay $5,977,019.84 to CPI. This amount represented the city's 50 percent share of the total condemnation proceeds awarded to CPI in 1997, and it included interest calculated at the variable treasury-bill rate specified in G.L.1956 §§ 37–6–23 and 37–6–29. With respect to the other half of the award, CPI had agreed to reimburse the state in an amount equal to one-half the "total condemnation proceeds awarded" to CPI, in consideration of the state having conveyed to CPI in 1989 a certain parcel of real estate in Providence (referred to by the parties as "parcel nine"). Thus, in effect, CPI had agreed to credit the state with having already paid to CPI its one-half share of the future condemnation award.

■ The Superior Court, we conclude, erred as a matter of law in excluding interest from its calculation of the "total condemnation proceeds awarded" to CPI. As a matter of fact and law, the total condemnation proceeds awarded to CPI in 1997 included prejudgment interest from the date of the condemnation to the date of the judgment embodying the award. Indeed, after the judgment became final on April 17, 1998 (the date this Court affirmed the 1997 judgment, see *Capital Properties, Inc. v. State*, 714 A.2d 617 (R.I. 1998)), the total judgment (principal plus prejudgment interest) continued to accrue interest until the date of payment. This is so because the law requires condemnation awards to include pre- and post-judgment interest. See *M.S. Alper & Son, Inc. v. Director of Public Works*, 98 R.I. 154, 159, 200 A.2d 583, 587 (1964); see also *Cardi Corp. v. State*, 561 A.2d 384, 386–88 (R.I. 1989). Thus, "a condemnee is entitled to

1. *Capital Properties, Inc. v. State*, 749 A.2d 1069 (R.I.1999); *Capital Properties, Inc. v. State*, 726 A.2d 12 (R.I.1998); *Capital Proper-* ties, *Inc. v. State*, 714 A.2d 617 (R.I.1998); *Capital Properties, Inc. v. State*, 636 A.2d 319 (R.I.1994).

interest on the fair market value of [the] property from the day of the taking to the day of payment." *M.S. Alper & Son, Inc.,* 98 R.I. at 160, 200 A.2d at 587 (per curiam) (on motion for reargument); *see also 6A Nichols on Eminent Domain* § 26E.02[4] at 26E–34–35 (3d. rev. ed.2000) ("[i]nterest * * * is both part of the [condemnation] award itself, and represents part of [the] just compensation to which a condemnee is constitutionally entitled, arising out of the delay which takes place between the taking of the property and ascertainment of the award"). Thus, the total condemnation proceeds awarded to CPI in this case, as in any other condemnation proceeding, included both a principal component for the value of the land on the date of the taking and prejudgment interest thereon to the date the judgment became final. Thereafter, interest continued to accrue on the total of principal plus prejudgment interest to the date of any payment, and then on any remaining unpaid balance.

We recognized this on December 20, 1999, when we ordered the state to pay to CPI the city's share (namely, one half) of the total condemnation proceeds awarded to CPI, an amount that included both the value of the land taken and interest thereon to the date of payment. Moreover, CPI has already enjoyed the benefits associated with its receipt of the state's 1989 transfer to it of parcel nine in lieu of the state's paying to CPI its one-half share of the total condemnation proceeds that were awarded to CPI in 1997. When the state transferred parcel nine to CPI in 1989, CPI had suggested it was worth some $8,000,000. Thus, a full eight years before CPI obtained a condemnation judgment that included $6,100,949 ($8,700,000 less $2,599,051 previously paid) (representing the value of the land taken from CPI by the state), plus $4,552,379.60 (representing interest and costs on that taking to the date judgment entered), for a total award of $10,653,328.03, the state effectively had prepaid its one-half share of these total condemnation proceeds. For this reason, as a matter of equity, CPI has been more

than fully compensated for the state's share of the total condemnation proceeds it was awarded, having enjoyed the benefits of owning parcel nine since 1989. It is entitled to nothing more, we hold, under its 1987 agreement with the state.

## II

### Interest on the Condemnation Award

▪ . Amending §§ 37–6–23 and 37–6–29 in 1994, the General Assembly enacted P.L.1994, ch. 258, §§ 1, 2 (the 1994 amendment) to provide for a pre- and post-judgment rate of interest on condemnation awards that would equal the applicable fifty-two week treasury-bill rate. The act became effective upon its passage in 1994 and applied to "all pending cases where a petition for assessment of damages has been filed but final judgment has not been entered." P.L.1994, ch. 258, § 3.

▪ As a result of the 1994 amendment, the pre- and post-judgment interest rate on any future condemnation award to CPI in this case became the variable treasury-bill rate instead of the previous 12 percent per annum rate. *See Lischio v. Gill,* 704 A.2d 216, 217 (R.I.1997). Because a judgment ultimately entered in this case in 1997, the 1994 amendment required that judgment to use the applicable treasury-bill rate, and not the prior 12 percent rate. *Id.* In *Lischio* we rejected the argument, reprised here by CPI, that once a judgment using an erroneous interest rate becomes final, the Superior Court cannot correct the amount of interest. *Id.* at 216. On the contrary, we held in *Lischio* that "[b]ecause an incorrect rate [of interest] was calculated [for a condemnation award in a final judgment], the court was permitted to amend this 'clerical' error at any time pursuant to Rule 60(a)." *Id.* at 217. Although the state in this case failed to file a Super.R.Civ.P. 60(a) motion to correct the erroneous interest rate used to compute the award set forth in the court's 1997 condemnation judgment, it did raise

this issue with the Superior Court pursuant to our December 20, 1999, order of remand. Moreover, Rule 60(a) permitted that court to correct this type of mistake in the judgment "at any time of its own initiative" after it became aware of this error. Indeed, even when an appeal is pending "such mistakes * * * may be so corrected with leave of the appellate court." *Id.* Here, by virtue of our remand order allowing the parties to raise this issue with the Superior Court, we effectively gave the court leave to do so if it determined that such a correction was in order.

■ 1 Unfortunately, the motion justice erred in concluding that the state had waited too long to call this interest-rate error to the court's attention. Such non-discretionary mistakes in judgments "arising from oversight or omission may be corrected by the court *at any time* of its own initiative or on the motion of any party." *Id.* (Emphasis added.) Moreover, it was not the state's responsibility to calculate the correct amount of interest on the judgment in the first place, nor was it obliged to call this error to the court's attention within a certain period. Rather, the calculation of interest on a judgment is supposed to be a ministerial act for the clerk of the court to perform. *See Cardi Corp.*, 561 A.2d at 387. Thus, it is usually not even an issue to be decided by the court. *See id.* Although interest in this case should have been calculated by the clerk pursuant to the rate specified in the 1994 amendment to §§ 37–6–23 and 37–6–29 and automatically added to the judgment, *see id.*, it was not. But once this mistake became known to the court, it should have corrected this clerical or computational error in the judgment on its own initiative or pursuant to the state's requests for it to do so on remand. *See DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 778 (R.I.2000).

Accordingly, we vacate those portions of the Superior Court summary judgment that are inconsistent with this requirement and order the court on further remand to enter an amended judgment that includes interest calculated pursuant to §§ 37–6–23 and 37–6–29: namely, (1) from the date of the condemnation to April 17, 1998, the date the judgment became final, and thereafter, (2) on the combined total of the principal portion of the award and of the prejudgment interest calculated to the date the judgment became final to the date of payment "at a rate equal to the average of the coupon issued yield equivalent as determined by the secretary of the treasury of the average accepted auction price for the auctions of fifty-two (52) week United States [T]reasury bills." As specified in § 37–6–23, post-judgment interest on this award "shall be computed at the [treasury-bill] rate as set out herein," and "shall be computed daily to the date of payment and shall be compounded annually."

### Conclusion

This affray, we hope, will now abate. In any event, we sustain the state's appeal, vacate the summary judgment entered by the Superior Court pursuant to that court's decision dated March 24, 2000 (insofar as it is inconsistent with this opinion), and remand this case to the Superior Court with directions to enter an amended final judgment as provided for herein.

### APPENDIX

#### Supreme Court

No. 99–324–A

Capital Properties, Inc.

v.

State of Rhode Island, et al.

#### ORDER

On December 2, 1999, we issued an opinion in this case denying and dismissing the appeals of the state and city, and adopting as our own the opinion of the Superior Court. However, we modified the summary judgment entered in the Superior

Court with the addition of the following provisions:

"1. By reason of a waiver entered in open court by counsel for CPI, the state shall not be required to pay its 50 percent share of the award to CPI since CPI acknowledges that it has already received full reimbursement for the state's share by an earlier payment plus the conveyance of parcel No. 9 from the state to CPI. Consequently the state shall, pursuant to the summary judgment entered in the Superior Court, pay to CPI within twenty days from the date of this opinion the 50 percent share of the condemnation award that we held in the Superior Court to be attributable to and ultimately payable by the city.

2. Within twenty days of the date of the payment by the state of the share of the award attributable to the city, the city shall, pursuant to the conditional summary judgment entered in the Superior Court, pay to the state complete reimbursement for the state's payment to CPI of the city's share of the condemnation award." (slip opinion, pp. 2–3)

Counsel for plaintiff Capital Properties, Inc. (CPI), seeks clarification of paragraph 1 of the modifications, contending that CPI's open-court waiver, referred to therein, was not intended to include a waiver of CPI's right to seek damages for the state's breach of the 1987 CPI–State agreement. Counsel requests that our opinion be changed so as to specifically include within the mandate instructions that on remand the hearing justice determine CPI's breach-of-contract claims. Counsel for the state opposes this motion, and moves for confirmation, in light of our opinion, that the litigation concerning CPI's claim to the state's share of the condemnation award is concluded.

The state's motion further seeks a determination from this court that the relevant statutes governing the computation of interest on the condemnation award between the date of final judgment and the date of payment thereof require utilization of the Treasury–Bill rate. CPI responds that the state's assertion of this interest-rate issue now is procedurally inappropriate, that it is barred by the doctrine of *res judicata,* and that in any event, a proper reading of the statutes makes it clear that the general interest rate of 12% is applicable in the post-judgment period up to the date the judgment is paid.

After careful review of the memoranda submitted by counsel, we hereby direct that the following order shall enter:

1. All contentions of counsel for the parties in respect to CPI's breach-of-contract claim and the state's post-judgment interest claim should be presented for determination in the first instance to the Superior Court hearing justice in this matter. Therefore, the mandate of our opinion is amended to provide that further proceedings in this case on remand shall include a consideration of these issues by Justice Needham. Any party aggrieved by the justice's ruling on these claims may appeal such ruling to this Court.

2. The state shall pay to CPI on or before December 22, 1999 the principal amount of the judgment together with interest at the Treasury Bill rate which the state concedes is due to plaintiff in accordance with our opinion, and the city shall reimburse the state such amount within twenty days of the date of payment, all as provided in the modifications contained at pages 2–3 of our slip opinion. This payment is without prejudice to CPI's right to claim in the Superior Court that additional interest should be due and payable at the standard post-judgment rate provided by G.L.1956 § 6–26–1.

GOLDBERG, Justice, dissenting. I dissent from the remand of this case for further proceedings in the Superior Court. Final judgment has entered in this case on more than one occasion and indeed a writ

of mandamus was issued from the Superior Court ordering the state to pay the judgment forthwith. The interest calculation that is the subject of this recent flurry of post-judgment activity was part of the mandamus judgment issued in 1998 in the Superior Court. This interest calculation was never raised in any proceeding in the Superior Court at the time of entry or later in this Court on appeal, nor even later before Justice Needham during the last round of post-judgment proceedings and finally, the issue was not raised before this Court during the recent appeal of Justice Needham's comprehensive decision. Enough is enough.

The travel of this case reflects that condemnation damages were awarded and a judgment entered in the Superior Court on May 6, 1997. This Court affirmed that judgment on April 17, 1998, wherein we declined to review the merits of the state's post-judgment arguments relative to the contractual obligations of the parties and of non-parties, noting that "the merits of this issue * * * were never properly before the Superior Court."

The state then sought a stay of the execution on the judgment from the Presiding Justice of the Superior Court who not only denied the requested relief, but also noted that to rule otherwise "would be to ignore established principles of *res judicata*, or even collateral estoppel."

On July 22, 1998, the aforementioned writ of mandamus was issued compelling payment of the final judgment to Capital Properties. That trial justice concluded that CPI had a clear legal right to this payment and the state has but a ministerial legal duty to pay the judgment. The interest rate was set forth in the writ and was never objected to by the state.

On December 3, 1998, a three-judge panel of this Court heard the state's appeal from the judgment of mandamus and ordered that before the judgment was paid, the state's post-judgment defenses be addressed in the Superior Court. However, we directed that all matters be heard and decided and ruled as follows:

"Accordingly, we defer further consideration of this appeal pending resolution of these remaining issues, and we remand this case to Justice Needham with our direction to consolidate, hear, and decide *all claims* and defenses, including, but not limited to, title to parcel 9, alleged unpaid taxes owed by CPI to the city, and any agreements between the city and the state and *any* further unresolved claims between the parties."

In what can be described as a Herculean effort, Justice Needham issued a comprehensive decision and went so far as to pass upon the appropriateness of the judgment of mandamus. During the course of that proceeding, not a word was raised about the previously calculated interest on the judgment. This Court, in near record time, heard and decided the appeals of all parties to these post-judgment "motions" and issued an opinion in which we affirmed Justice Needham in all respects except one, which was suggested by CPI at oral argument. However, neither side was satisfied with our decision, and sought another remand for yet another round of post-judgment hearings. The state is now questioning, for the first time in this prolonged case, the appropriateness of the interest calculation. CPI, on the other hand, is concerned about the viability of its breach of contract claims that were reserved by Justice Needham and are properly the subject of a remand. The state's concerns are another matter.

Simply put, I agree with the Presiding Justice's 1998 pronouncement that these issues are barred by principles of *res judicata*. This Court has consistently adhered to the doctrine of *res judicata* as it relates to the preclusive effect of a final judgment between the parties. *E.W. Audet & Sons, Inc. v. Firemen's Fund Insurance Co.*, 635 A.2d 1181 (R.I.1994); *ElGabri v. Lekas*, 681 A.2d 271 (R.I.1996); *Garganta v. Mobile Village, Inc.*, 730 A.2d 1 (R.I.1999).

In any other case, the parties would be precluded from re-litigating all issues that were actually litigated or that *could* have been litigated in any of the plethora of hearings and appeals in this case. "When *res judicata* is invoked, it renders the original judgment conclusive with respect to any issues that were raised or that *could have been raised.*" *E.W. Audet & Sons, Inc.,* 635 A.2d at 1186. (Emphasis added.) The inviolability of that doctrine has been tested by my colleagues in this case not once, but now twice. Consequently, I dissent.

Entered as an Order of this Court this 20th day of December 1999.