**Steven C. IMBER**

**v.**

**Ruth E. IMBER.**

**Nos. 97–59–Appeal, 97–428–Appeal.**

Supreme Court of Rhode Island.

June 26, 1998.

Henry M. Katz, Lauren Jones, Providence.

William J. Lynch, Providence.

## ORDER

These consolidated cases, both on appeal, one from the Superior Court, the other from the Family Court, and both involving the same principle parties and issues, came before a panel of this Court on June 16, 1998 pursuant to an order directing both parties to show cause why their respective appeals should not be summarily decided.

After reviewing the memoranda submitted by the parties and hearing the arguments of their counsel, we are of the opinion that cause has not been shown. The issues raised in the consolidated appeals will be decided at this time.

In one appeal, the plaintiff, Steven Imber (Steven), appeals from an order of the Superior Court entered on January 6, 1997 granting the defendant Ruth Imber's (Ruth) motion for summary judgment and dismissing his complaint for declaratory judgment. In the other, Steven appeals from a Family Court order entered on December 20, 1996 directing him to contribute to the cost of college tuition for one of his daughters, Sharon Imber (Sharon). Because the last names of both parties are the same, we shall refer to them as Steven and Ruth.

Steven and Ruth married in 1968. Two children, Michelle, in 1974, and Sharon, in 1978, were born of the marriage. On April 10, 1987 Steven and Ruth were divorced. Prior to their divorce, Steven and Ruth entered into a marital settlement agreement that was later incorporated, but not merged, into their final judgment for divorce. Two separate provisions in that marital agreement form the subject matter of the two appeals before us.

Paragraph seven of the marital agreement provides that

"[a]ll questions pertaining to the education, health, summer activities, and welfare of the minor children shall be decided by the Husband and Wife jointly, and each shall consult with the other as often as it may be necessary regarding all such matter."

Paragraph nine of the marital agreement provides that with respect to the college education of the children:

"Both parties agree that it is their desire that the children of the parties, if able to do so, are afforded a four-year college education. Both parties agree that consistent with each's financial capability at the time the said children go to college that they will contribute towards said college education."

When Michelle, the eldest daughter, was about to graduate from high school, she elected to attend Brown University and qualified for admission. Steven balked at her choice of college and complained to Ruth that he had not been adequately consulted regarding Michelle's decision to attend Brown pursuant to the marital settlement agreement. It appears, however, from the record that his real objection was that as a tenured professor at Rhode Island College his children are entitled to attend either Rhode Island College or the University of Rhode Island tuition free, and he believes that he should have played more of a part in Michelle's decision to attend Brown. He refused to pay for any of Michelle's tuition costs.

Ruth responded to Steven's intransigence by filing a petition to enforce the marital agreement in the Family Court. After several hearings during which both Ruth and Steven's financial capabilities to contribute to Michelle's tuition costs at Brown were considered by the trial justice, Steven was ordered to pay for one-half of the cost of Michelle's tuition at Brown. Steven defied that order and Ruth was required to file a second Family Court petition to adjudge him in contempt. On February 10, 1995, a Family Court justice rejected Steven's "failure to have been consulted" contention based on paragraph seven in the Marital Agreement and found him in contempt for failing to abide by paragraph nine in that agreement. Apparently foreseeing similar future resistance on the part of Steven, including perhaps when Sharon, Michelle's younger sister would reach college age, the Family Court trial justice warned Steven that if Ruth had to come back again to enforce the tuition portion of the marital agreement he would assess Steven a $1,000 counsel fee if found in wilful contempt. Steven thereafter complied

with the court's order to pay one-half of Michelle's tuition.

Unfortunately, not long thereafter when Sharon, the parties second and younger daughter, was in her junior year of high school, Steven wrote to Ruth under the asserted pretense of becoming more involved in Sharon's college-selection process than he was in Michelle's college-selection process. What should have been a display of fatherly interest in his daughter's education, happiness and well-being instead turned out to be an attempt once again by Steven to avoid his obligations set forth and agreed upon in the marital settlement agreement. Steven asserted, as he had earlier in the Family Court action involving Michelle, that pursuant to paragraph seven in the marital agreement, he had absolute right to be involved in Sharon's college-selection process. It continued to be Steven's position that Ruth had to comply with paragraph seven of the marital agreement before he would voluntarily pay for any college tuition for Sharon as called for in paragraph nine.

In August 1995, Steven, apparently mindful of the $1,000 counsel fee warning given him by the Family Court justice in the February 10, 1995 order that had found him to be in contempt with regard to Michelle's tuition at Brown, elected to end-run that order into the Superior Court and hopefully obtain a second and more favorable opinion regarding his rights and obligations embodied in paragraphs seven and nine in the property settlement agreement. Steven filed a petition in the Superior Court for a declaration of his rights in the marital agreement and in particular whether his eligibility for tuition free education for his children at Rhode Island College and the University of Rhode Island satisfied the mandates of paragraph nine in the agreement.

Ruth answered Steven's Superior Court August 1995 maneuver to side step the Family Court's February 10, 1995 order, and moved to transfer Steven's Superior Court petition to the Family Court or, in the alternative, for summary judgment. She also, in October 1995, filed a petition in the Family Court seeking specific performance of the marital agreement because Sharon, although in her senior year at high school and about to graduate, he had elected to attend Boston University and Steven, once again, was entrenched in his no pay position.[1] Steven responded to Ruth's Family Court petition to enforce his compliance with the marital agreement as regard Sharon with a motion to dismiss Ruth's petition contending therein that it was premature because Sharon had just graduated from high school and he had not as yet been presented with any tuition charges and had thus not yet refused to pay his one-half share of Sharon's tuition costs.

The Family Court justice, after hearing held on Steven's motion to dismiss Ruth's petition, denied Steven's motion and in doing so, continued Ruth's petition for further hearing, and declared in support of the continuance that the Family Court would retain continuing jurisdiction to monitor Steven's compliance with the marital agreement. After several continuances, the matter was finally heard in part on September 10, 1996, the same day that Ruth's motion for summary judgment on Steven's petition for a declaration of rights was scheduled for hearing in the Superior Court.[2] Later on October 3, 1996, following further hearing on Ruth's petition, the Family Court trial justice concluded that the tuition payment paragraph (paragraph nine) in the marital agreement was completely independent of the joint decision making paragraph (paragraph seven) and that compliance with paragraph seven was not a condition precedent to Steven's obligations imposed by paragraph nine. The trial justice, in light of paragraph nine contained in the parties'

---

1. It should be noted from the record before us that Steven was not, as suggested by him, completely left in the dar regarding Sharon's choice of college selection. Ruth, on July 6, 1995, corresponded with Steven regarding Sharon's high school grades and P.S.A.T. and S.A.T. test scores; Sharon discussed with her father her choice to attend Boston University and Ruth had informed Steven of the various colleges to where Sharon had applied for admission and of Sharon's offers of financial aid from Boston University.

2. Neither of the parties appeared at the Superior Court hearing because they were both under the mistaken impression that the Superior Court hearing had been continued.

marital settlement agreement, also again reviewed and considered both Ruth and Steven's financial abilities to contribute, this time to Sharon's tuition at Boston University. In an order entered on December 20, 1996, the Family Court justice ordered Steven to pay $7,696 in two installments for Sharon's tuition at Boston University. In addition, Steven was ordered to pay $4,200 for Ruth's counsel fees. Steven appealed to this Court.

Seventeen days later on January 6, 1997, the Superior Court justice who had heard Ruth's motion for summary judgment on Steven's petition for a declaration of rights, entered an order granting her motion. In that order, the hearing justice concluded that the Family Court had previously construed Steven's obligations to contribute to his daughters' educations and that the Family Court's February 10, 1995 unappealed order was dispositive of Steven's contentions and that his petition in the Superior Court was frivolous. Steven appealed from that order.

We conclude no error on the part of the Family Court justice who entered the December 20, 1996 order that is questioned here or on the part of the Superior Court justice who later granted Ruth's motion for summary judgment and dismissed Steven's petition for a declaration of rights by order entered on January 6, 1997.

The Superior Court hearing justice was correct in dismissing Steven's petition for a declaration of rights because the precise issues that were raised by Steven in the petition had been decided in the earlier Family Court action involving Michelle.[3] Thus, the doctrines of res judicata and collateral estoppel barred relitigation of those precise issues.[4] The trial justice acted well within his discretion in determining that Steven's petition regarding Sharon was frivolous since the

exact same tuition payment issues had been litigated in the earlier Family Court action involving Michelle and had been decided in favor of Ruth. Thus, it appears clear that Steven was merely looking for a new forum in which to present his already defeated claims and hopefully obtain a second and more favorable opinion.

We likewise discern no error on the part of the Family Court trial justice in awarding counsel fees for Ruth's counsel. We believe, as noted by the trial justice, that because of the long and protracted Family Court litigation necessitated by Steven's persistent refusals to abide by the marital settlement agreement the $4,200 award was reasonable. We have repeatedly held that absent an abuse of judicial discretion on the part of the trial justice in fixing the amount of counsel fees to be awarded in Family Court matters, we will not disturb his or her discretion. *Becker v. Perkins–Becker*, 669 A.2d 524, 529 (R.I.1996).

Accordingly, for all the foregoing reasons, Steven's appeals are denied and dismissed and the judgments appealed from are affirmed. The papers in the consolidated appeals are remanded to the Superior Court and the Family Court, respectively.

WEISBERGER, C.J., and LEDERBERG, J., did not participate.

---

**3.** Steven had raised what he claimed to be his right not to pay for any tuition costs unless he had fully participated in making the choice of college decision selected by his daughters as well as his inability to pay argument and the availability of free tuition to state colleges argument in the action involving Michelle. Although he had not raised the issue in the earlier action, thereby invoking the bar of res judicata notwithstanding the failure to raise those issues earlier. *See E.W. Audet & Sons v. Fireman's Fund Ins. Co.*, 635

A.2d 1181, 1186 (R.I.1994); *Beirne v. Barone*, 529 A.2d 154 (R.I.1987).

**4.** Although Sharon was a party in the Superior Court action and obviously was not a party in the earlier action involving Michelle, the principle parties, Steven and Ruth, were identical, as required by the res judicata doctrine. *E.W. Audet & Sons v. Fireman's Fund Ins. Co.*, 635 A.2d 1181 (R.I.1994).