**Grace M. ALMONTE, et al., Plaintiffs, Appellees,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Defendant, Appellant.**

No. 82–1558.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1982.

Decided April 26, 1983.

Raymond A. LaFazia, Providence, R.I., with whom Guy J. Wells and Gunning, LaFazia & Gnys, Inc., Providence, R.I., were on brief, for defendant, appellant.

Vincent D. Morgera, Providence, R.I., with whom Lovett, Morgera, Schefrin & Gallogly, Ltd., Providence, R.I., was on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and HEMPHILL,* Senior District Judge.

PER CURIAM.

Appellant, National Union Fire Insurance Company, appeals from a final judgment

---

* Of the District of South Carolina, sitting by    designation.

entered after a jury trial in the United States District Court for the District of Rhode Island. The issues urged on appeal are whether: 1) the trial judge should have granted defendant's motion to dismiss the bad faith claim prior to trial instead of ruling upon it as a motion for directed verdict; 2) the trial judge should have granted defendant's motion to pass (mistrial) due to plaintiffs' allegedly prejudicial statements in plaintiffs' opening statement; 3) the trial judge should have admitted Anthony Almonte's statement made after the vandalism of October 25; 4) the trial judge properly interpreted the law on recovery of property damages under an insurance contract; 5) the verdict is against the weight of the evidence in that Anthony Almonte is the real party in interest; 6) the trial judge should have allowed defendant's (claimed) new evidence.

Appellee, Grace M. Almonte, is the owner of a building insured by appellant, National Union Fire Insurance Company. On October 25, 1977, the contents of the building were vandalized, but the insurance coverage did not extend to the personalty contained within the building. On October 30, 1977, a fire caused substantial damage to the building and its contents. There was substantial evidence of arson, and appellant refused to pay the loss.

Grace Almonte, along with Fairway Foods, Inc. and Consolidated Ice Cream, Inc. (each of whom claimed property interests), instituted this civil action on October 28, 1978, containing one count based upon the contract of insurance. On December 18, 1981, plaintiffs added the issue of bad faith on the part of the insurance company. Trial before a jury began on February 11, 1982.

At the conclusion of plaintiffs' case, the Court directed a verdict for defendant insurance company on the "bad faith" claim. The Court later told the jury that there was no evidence before them which would permit a recovery by plaintiffs, Fairway Foods,

Inc. and Consolidated Ice Cream, Inc. On February 25, 1982, the jury returned a verdict for plaintiff, Grace M. Almonte, awarding damages on the vandalism loss in the amount of $65,000.00 and damages on the fire loss in the amount of $325,000.00. Interest at twelve per cent from the date of the loss was added. Defendant timely filed a motion for a new trial. On June 7, 1982, an Order denying defendant's motion for a new trial was entered. Defendant also timely filed its appeal to this Court.

The first two issues taken together indicate that appellant complains of serious prejudice in the way in which the trial judge handled the resolution of the bad faith issue. After examining the record, we reach the conclusion that the trial judge committed reversible and prejudicial error when he failed to grant the motion to dismiss the bad faith claim in spite of finding no support for it and when he failed to grant the motion to pass. The prejudice arising from these errors was that the jury was allowed to hear very prejudicial statements concerning the bad faith claim. The trial judge never counteracted this prejudice since he never admonished the jury to disregard the testimony presented on the bad faith issue.[1]

It is helpful to look at a chronology. Prior to trial, defendant, appellant, made a motion to dismiss the bad faith claim. Before a hearing on the motion, plaintiffs noticed the deposition of defendant's investigator and subpoenaed defendant's file. Defendant sought a protective order, and the Court ordered the file delivered to it for an *in camera* inspection to determine if the file contained any evidence of bad faith. On February 11, 1982, immediately before trial, the trial judge, responding to the continuing request by the plaintiffs for production of the file stated:

THE COURT: I am going to deny your request and return the file to Mr. LaFazia.... I have nothing before me which remotely suggests that there is any factu-

---

1. We do not reach the issue of whether the Rhode Island bad faith cause of action, R.I.G.L. 9–1–33, has retroactive effect and whether

such a cause of action is appropriate under these facts.

al basis for an issue of bad faith settlement. I spent several hours, and that's an understatement, reviewing the file, and I must say I can't find anything in it at this point that I think even remotely suggests a bad faith effort to settle, or a lack of good faith in settling. That's my impression from looking at the file.

The judge did not, at the time, pass on the motion to dismiss.

Defendant then moved *in limine* to preclude plaintiffs from referring to the bad faith claims in their opening statements; the motion was denied. When plaintiffs made reference to the bad faith claims in their opening,[2] defendant moved for a mistrial [3] based upon prejudice, which was denied.

The plaintiffs' opening statement included the following:

After going through this procedure, submitting the proof of loss, dealing with the adjuster from the insurance company, my client never received an offer of settlement on this case.

\* \* \* \* \* \*

Now Angelo Almonte was never paid, and Santina Realty was never paid for the loss they sustained to themselves because of the mortgage they had on the building and the equipment.

Now, needless to say, the defendant, National Union Fire Insurance Company, is holding all the cards in this particular case, when this loss happened.

\* \* \* \* \* \*

Now, I told you before, this loss was determined of incendiary origin, which means somebody set the fire. But if that's the only criterion that the defendant insurance company is going to use to deny a loss, then we are all in trouble here whenever there is a fire of incendiary origin.

\* \* \* \* \* \*

In this particular case, the insurance company has the final say, and had the final say as to whether or not they would pay, and they refused to pay. They refused to pay Grace Almonte who was the owner of the building, and the equipment, and they refused to pay the mortgagee, and because of that, there was a tremendous loss of revenue sustained by the Almontes, and more importantly, they became so distressed financially, that they went through a nightmare since this loss happened, in terms of their personal lives, liens on their personal property, mental anguish and torment, humiliation, because of their problems; the building which is still standing in its damaged condition is a source of constant activity by the Department of Buildings, to have Grace Almonte repair it, and she has been dragged into court, and is presently under fine of $100 a day to fix that building up, and she doesn't have the money to do it. And the last time she went to court the Judge said he might put her in jail unless she fixes that building up. It's a very expensive proposition to fix that building up and she doesn't have the money to do it. So these are some of the problems that the Almonte family has had to suffer and endure because the National Union Fire Insurance Company has refused to pay, and you are going to see during the trial their efforts to besmirch and blacken the Almonte name and get them involved by indicating (objection) by indicating that this Almonte family actually caused the vandalism loss and fire loss. They are going to establish through whatever circumstantial evidence they can drag up that they were involved, and that's why they didn't pay, and you people will be called upon to decide, Number 1, whether or not there was a vandalism loss, whether there was

2. While the judge did warn the jury prior to the opening statements that the statements of counsel are not to be taken as evidence (R.A. 494, 496) and repeated that warning in his final instructions (R.A. 462), these admonitions do not totally mitigate the prejudice caused by the opening statements since the jury heard some of the same information from the witness stand.

3. Apparently, in Rhode Island, a motion for a mistrial is called a motion to pass the case.

a fire loss, and what the amount of damage was that they sustained, and more importantly, I think whether this defendant should be penalized for the way they treated this particular fire loss, and that's the bad faith claim, and it's a new claim here in Rhode Island, and it's still on shaky grounds as far as it's never been tested before, but this to my knowledge is the first case, where that claim is going forward.

At the close of plaintiffs' case-in-chief, the trial judge directed a dismissal of the bad faith issue. After detailed examination of the record, we cannot find anywhere that the trial judge directed the jury to disregard the evidence presented on the bad faith issue.[4] The nature of the testimony is highly prejudicial and all of it would have been excluded but for the bad faith claim.

A brief review of some of the testimony which was admitted prior to the directed verdict is instructive. Plaintiffs' attorney asked Mrs. Grace Almonte whether she and her husband had received any income from the plant and whether the lack of income therefrom had caused any problems. Mrs. Almonte's response was that she and her husband had experienced problems with creditors, her home had been listed for several years on tax sale notices, and some investment property had to be sold. Moreover, Jesse Bromley, a public adjuster hired by the Almontes to represent them, was allowed to testify at length concerning settlement negotiations.

That these kinds of statements are prejudicial is clear. In the absence of the bad faith issue, Federal Rules of Evidence 403

would have operated to exclude the testimony of Mrs. Almonte, *supra.* Furthermore, without the bad faith claim, much of Mrs. Almonte's testimony is irrelevant, and Rule 402 would have prevented its introduction. Rule 408 would have prohibited Bromley's testimony on settlement negotiations. The policy behind these rules is sound: ". . . [E]vidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Fed.R. Evid. 403.

Because of prejudicial error in failing to counteract the prejudice created when the jury heard these statements and evidence, this Court has no choice but to reverse.

■ Because we reverse, we find it unnecessary to reach the other issues.[5]

REVERSED AND REMANDED FOR A NEW TRIAL.

COFFIN, Chief Judge, dissenting.

I am constrained to dissent, because I do not believe that the court below committed reversible error. My reasons are simple. As to defendant's argument that the court should have dismissed plaintiff's bad faith claim prior to trial instead of ruling on it as a motion for a directed verdict, the record indicates that the motion to dismiss was based not on lack of evidence, but on the unconstitutionality of retroactive application of the Rhode Island statute creating a cause of action for bad faith. No ruling was ever made on that issue, nor am I inclined to believe that the argument has much merit. As to the court's denial of

---

**4.** In fact, the Court refused outright to admonish the jury to disregard the evidence presented on the bad faith issue. (R.A. 460). While it is true that the trial judge did not mention the bad faith claim in his instructions or in his discussion of damages, such an omission cannot overcome the prejudicial effect of the testimony and opening statements.

**5.** On the issue of the proper measure of damages, the appellant contends that the trial court improperly instructed that the proper measure of damages was replacement cost less depreciation. (R.A. 479). Instead, the appellant argues that the proper measure is actual cash

value at the time of the loss. As this case arises out of Rhode Island, that state's law must govern. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Apparently, the Rhode Island courts have not specifically addressed this question. This Court has no intention of saying what the Rhode Island law is or should be on this question. However, the trial judge apparently followed the majority rule (R.A. 440–447) that actual cash value is replacement cost less depreciation. Annot. 61 A.L.R.2d 711 (1958), We would be unwilling to hold that Rhode Island law is contrary to the majority rule.

defendant's request for a mistrial, I do not read the statements regarding bad faith in plaintiff's opening as outrageous enough to require that we second guess the court's judgment that the trial could proceed. Finally, other than a cryptic comment to the court in a colloquy regarding jury instructions, I do not find any indication that defendant, represented by competent and seasoned trial counsel, ever unambiguously requested an instruction that the jury disregard evidence of bad faith. Accordingly, I am reluctant to reverse the court for not having given such an instruction.