**Robert URICO, et al., Plaintiffs, Appellees,**

v.

**PARNELL OIL COMPANY, Defendant, Appellant.**

No. 82–1747.

United States Court of Appeals, First Circuit.

Argued April 7, 1983.

Decided June 1, 1983.

Rehearing Denied June 16, 1983.

Jacob J. Locke, with whom Ficksman & Conley, Boston, Mass., was on brief, for defendant, appellant.

H. Glenn Alberich, with whom Mahoney, Hawkes & Goldings, Boston, Mass., was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and TAURO,* District Judge.

TAURO, District Judge.

The appellant (Parnell) seeks relief from a jury award to the appellees (Uricos) for the loss of use to them of their truck, following its collision with another truck driven by a Parnell employee. Parnell's primary theories here are that the district court erred 1) in allowing the jury to consider evidence of settlement negotiations, 2) in failing to limit loss of use damages to a reasonable repair period, and 3) in allowing the Uricos to calculate loss of use damages on the basis of their estimated lost profits.

I

The underlying facts are novel and require somewhat detailed exposition. On April 11, 1977, a truck driven by a Parnell employee struck the rear of one owned by the Uricos. The Uricos' truck had been leased by them to Richard Lester. Without permission from the Uricos, Lester had turned the truck over to Harold Windsor who was its operator at the time of the accident.

Shortly after the accident, Parnell's insurer, Bankers and Shippers Insurance Co. (B & S), contacted Windsor, arrived at a settlement, and issued checks in the amount of $15,102.05 for repairs and $3,500 for loss of use of the truck. B & S later stopped payment on the repair check when it learned that Windsor failed to retrieve the repaired vehicle.

The Uricos did not learn of the accident until June of 1977. They then informed B & S that Windsor lacked authority to reach a settlement on their behalf. Later, in Au-

* Of the District of Massachusetts, sitting by designation.

gust of 1977, they made a demand on B & S of $19,490.13 for property damage and $1,000.00 a week for loss of use. B & S took the position that it had already settled the claim with Windsor, but would be willing to pay the Uricos $15,102.05 for repairs if they, in turn, would waive their loss of use claim. The Uricos rejected this offer.

The truck had been repaired by the end of August, 1977, but the Uricos were unable to pay for the repairs and so could not take possession of it. The truck remained at the repair garage until September of 1979 when, by order of the district court, B & S issued a check to the Uricos in the amount of $15,102.05.

At trial, the Uricos sought damages for the loss of the truck's use from the time of the accident until B & S made payment for the repairs under court order. The Uricos' theory at trial was that B & S's wrongful refusal to make a reasonable settlement offer prevented them from mitigating their damages during the post-repair period. The jury found in favor of the Uricos, awarding $11,400.00 for loss of use during the repair period, and $51,100.00 for loss of use following repair.

## II

■ Parnell contends that the jury was prejudiced by the admission of testimony which detailed settlement discussions between the Uricos' then attorney and B & S. Parnell relies on those provisions of Rule 408 of the Federal Rules of Evidence which state that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations are likewise not admissible.[1]

But, Rule 408 has greater flexibility than that suggested by Parnell. It also provides that "[t]his rule does not require exclusion when the evidence [of settlement negotiations] is offered for another purpose . . . ." For example, evidence concerning negotiations may be admitted to establish admissions of fact rather than "hypothetical or provisional concessions conditioned upon the settlement's completion." *Hiram Ricker & Sons v. Students International Meditation Society,* 501 F.2d 550, 553 (1st Cir.1974), *quoting NLRB v. Gotham Industries, Inc.,* 406 F.2d 1306, 1313 (1st Cir.1969).

■ The Uricos had a clear duty to take all reasonable steps to mitigate damages. *See, e.g., McKenna v. Commissioner of Mental Health,* 347 Mass. 674, 199 N.E.2d 686 (1964). They introduced evidence as to the course of settlement negotiations in order to excuse their failure to mitigate. Their evidentiary theory at trial was that 1) their truck was damaged and could not be used by them in business, 2) the circumstance of their truck being rear ended while parked in a breakdown lane forecast the substantial likelihood of a liability finding should the issue of fault be litigated,[2] 3) they were unable to pay for the repairs, and so could not get the truck back on the road in furtherance of their business, 4) B & S was aware that the Uricos did not have the financial means to retrieve the truck from the repairer, and 5) even though aware of these facts, B & S refused to pay for the repairs unless the Uricos waived their other claims. In short, the Uricos attempted to show that B & S unreasonably held their

---

1. Parnell also cites Mass.Gen.Laws ch. 231, §§ 140B & 140C, for the proposition that the mere mention of insurance is highly prejudicial. We doubt that these statutes would be construed by the Massachusetts courts to go so far as to exclude reference to insurance settlements in the circumstances of this case. But even if the statutes would exclude the evidence, the controlling law here would appear to be the federal rules of evidence which permit such reference in appropriate circumstances, rather than the state statutes. *See Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820 (5th Cir.1980).

2. The jury found that Parnell was 90% negligent and that Windsor's contributory negligence amounted to 10%.

truck hostage in an effort to reach a total and advantageous settlement. Such evidence was clearly relevant to the factual issue of whether actions taken by B & S on behalf of Parnell[3] unreasonably prevented the Uricos from mitigating damage to them due to loss of use.[4]

Moreover, Parnell's claim of prejudice is undermined by its tactics at trial. By way of defense, Parnell attempted to prove that Windsor was authorized to settle the claim on behalf of the Uricos and that the Uricos, therefore, were barred from any further recovery.[5] In pursuing this evidentiary theory, Parnell introduced the testimony of a B & S insurance adjuster. Such an approach is inconsistent with Parnell's contention here that the mere mention of insurance may have prejudiced the jury.[6]

### III

■ Ordinarily, recovery for loss of use of a damaged vehicle is limited to that period of time reasonably necessary to complete repairs. *Antokol v. Barber,* 248 Mass. 393, 396–397, 143 N.E. 350, 352 (1924); *Homen v. Cabral,* 54 Mass.App.Dec. 62, 69 (1974); see *Koninklijke v. United Technologies Corp.,* 610 F.2d 1052 (2nd Cir.1979).

Here, the jury found that the Uricos were entitled to additional loss of use damages beyond the repair period, because of B & S's unreasonably dilatory settlement tactics.

The extension of loss of use damages beyond the repair period raises difficult policy questions. Limiting loss of use damages to a reasonable repair period recompenses the plaintiff for a finite period in which the vehicle is simply unavailable for use. An award of loss of use damages after the vehicle has been repaired, however, is potentially boundless. Anticipation of such an award could conceivably reduce any incentive that a plaintiff might have to mitigate losses. The evidence here, however, relieves us of these theoretical concerns. The Uricos, despite their good faith best efforts, could not mitigate their losses without possession of the repaired truck. B & S knew this. Nonetheless, B & S refused to issue payment for the repairs, despite the fact that they had previously done so to an unauthorized party.

■ Arbitrary conduct by an insurer, which serves to prolong rather than contain the interval of loss, is an appropriate circumstance for awarding damages beyond

**3.** Parnell claims that it was error to regard B & S as Parnell's agent, thereby ascribing to Parnell the consequences of B & S's unreasonable settlement negotiations. The evidence, however, supports a finding that Parnell authorized and relied on B & S's settlement negotiations. There was no evidence that Parnell undertook independent efforts to negotiate with the Uricos. B & S's unreasonable failure to settle the claim, or at a minimum, to put the Uricos in a position where they would no longer incur loss of use damages, may therefore be fairly imputed to Parnell. See *Hayes v. Gessner,* 315 Mass. 366, 52 N.E.2d 968 (1944); *accord Bergeron v. Mansour,* 152 F.2d 27 (1st Cir.1945) (defendant's insurer's actions in lulling plaintiff to sleep on its rights bound the defendant); *Bockser v. Dorchester Mutual Fire Insurance Co.,* 327 Mass. 473, 99 N.E.2d 640 (1951) (attempted fraud of an insurance agent acting within the scope of his authority binds the principal).

**4.** This case is readily distinguishable from our recent decision in *Almonte v. National Union Fire Insurance Co.,* 705 F.2d 566 (1st Cir.1983) in which there was no factual basis for the claim of bad faith settlement practices. Here, in sharp contrast, substantial evidence supported plaintiff's claim that defendant's bad

faith settlement negotiations made mitigation impossible.

**5.** On appeal, Parnell again argues that the settlement with Windsor barred recovery by the Uricos. Evidence at trial, however, demonstrated unequivocally that Windsor had no authorization to settle and that the insurer knew of the Uricos' ownership of the truck almost from the outset. The jury explicitly found, in response to a special interrogatory, that Windsor was not authorized to settle.

**6.** In this regard, Parnell's reliance on *Parento v. Palumbo,* 677 F.2d 3 (1st Cir.1982) is misplaced. In *Parento* we upheld the district court's refusal to pose voir dire questions to prospective jurors regarding possible connections they might have had with insurance companies. Here, evidence of insurance coverage and settlement negotiations were admitted with respect to a substantive issue affecting the measure of damages. Moreover, the district court was particularly careful to instruct the jury that insurance coverage ought not to play a role in their deliberations concerning liability.

the traditional reasonable repair period. In *Valencia v. Shell Oil Co.,* 23 Cal.2d 840, 147 P.2d 558 (1944), defendant initially promised to pay for repairs to a truck damaged in a collision with plaintiff. Repairs were undertaken in reliance on this promise. After the repairs were completed, defendant refused to pay unless plaintiff agreed to waive all other claims. In *Valencia,* the Supreme Court of California held that where plaintiff was financially incapable of paying for the repairs, and defendant's refusal to pay caused additional losses, plaintiff could recover loss of use damages for an extended period. *Id.* 147 P.2d at 561.[7] The application of that theory in no way diminishes the traditional requirement that plaintiffs may not recover for damages which could have been avoided by their reasonable efforts to mitigate. *See McKenna v. Commissioner of Mental Health, supra.*

### IV

Parnell also claims that the district court, 552 F.Supp. 499, erred in allowing the jury to consider the Uricos' projected lost profits in assessing loss of use damages. There was no error. Lost profits may be regarded as an element of damage when they can be established by reliable evidence. *Providence Granite Co., Inc. v. Joseph Rugo, Inc.,* 362 Mass. 888, 291 N.E.2d 159 (1972); *Lowrie v. Castle,* 225 Mass. 37, 113 N.E. 206 (1916). A claim for lost profits may be based on an established

earnings record. Mathematical certainty is not required. *Rombola v. Cosindas,* 351 Mass. 382, 220 N.E.2d 919 (1966). Here, the record of the Uricos' past earnings was properly introduced in order to demonstrate their lost profits.[8]

Parnell raises a number of additional objections to the manner in which damages were calculated. These objections are without merit. Contrary to Parnell's claims, the evidence of lost profits took into account overhead, and the trial judge specifically instructed the jury to consider damages only as to the damaged trailer and not as to the undamaged tractor. Finally, Parnell asserts that the Uricos' vehicle was a constructive total loss and so no loss of use damages may be awarded for it. B & S, however, clearly took the position that the trailer was reparable and, in fact, arranged for its repair. Parnell may not at this stage dissociate itself from B & S's pre-trial tactical choices.

*Affirmed.*

---

7. That the Supreme Judicial Court of Massachusetts (SJC) would follow *Valencia* if presented with the precise question is forecast by its recent decision in the case of *DiMarzo v. American Mutual Life Insurance Company,* 389 Mass. 85, 449 N.E.2d 1189 (1983).

   *DiMarzo* also serves to foreclose the Uricos' position that Mass.Gen.Laws chs. 93A § 9 and 176D provided them with a statutory right of action against B & S. In *DiMarzo,* the SJC held that, as of the 1979 amendment to ch. 93A § 9, such a right of action extends to "any person 'injured' by another person's unfair or deceptive act or practice." *DiMarzo v. American Mutual Life Insurance, supra,* 389 Mass. at 93 n. 7, 449 N.E.2d 1195 n. 7. Prior to that

amendment, however, only a purchaser or lessee of goods or services (the insured) could bring an action directly against an insurer under ch. 93A § 9. In this case, the incidents which gave rise to the Uricos' claim occurred prior to the 1979 amendment.

8. Parnell urges as well that the rental value of a similar trailer for the period in question would have fully compensated the Uricos. The evidence established, however, that an award based on fair rental value would have been substantially less than the Uricos' lost profits. The district court, therefore, properly admitted evidence of lost profits to ensure that the Uricos would be fully and fairly compensated.