**AMERICAN BRIDGE COMPANY,**
Plaintiff,

v.

**PROVIDENCE PLACE GROUP
LIMITED PARTNERSHIP,**
Defendant.

No. C.A. 02–377S.

United States District Court,
D. Rhode Island.

May 12, 2003.

David D. Barricelli, Hinckley, Allen & Snyder, Providence, RI, for Plaintiff.

Glenn Richard Friedemann, George E. Lieberman, Tillinghast, Licht, Perkins, Smith & Cohen, LLP, Providence, RI, Bruce E. Falby, Esq., Kirsten M. Nelson, Esq., Piper Rudnick LLP, Boston, MA, for Defendant.

### *DECISION AND ORDER*

SMITH, District Judge.

Defendant Providence Place Group Limited Partnership ("Defendant" or "PPGLP") moves to dismiss the Complaint of Plaintiff American Bridge Company ("Plaintiff" or "ABC"), or in the alternative for summary judgment. Oral argument on the motion was held on March 13, 2003. Having assessed the parties' arguments and submissions, the Court rules in favor of PPGLP and grants summary judgment to Defendant on all counts of the Complaint.

### I. *Facts*

This case relates to the construction of the Providence Place Mall ("the Project") between 1997 and 1999. PPGLP is the owner and developer of the mall, and contracted with Morse Diesel International, Inc. ("Morse") for construction management services on the Project. Morse subcontracted with SMI–Owen Steel Company ("SMI–Owen") for structural steel fabrication and erection of the building. SMI–Owen in turn subcontracted with ABC for the erection of structural steel.

ABC began work in April 1998. ABC alleges that it worked overtime hours on the Project from August 1998 through January 1999, and submitted its invoices to SMI–Owen. In January 1999, ABC alleges that SMI–Owen informed ABC that SMI–Owen would no longer pay ABC for overtime work on the Project. ABC thereafter informed SMI–Owen that it would no longer work any overtime hours.

In order to resolve this situation, Morse Diesel arranged a meeting between ABC's representative, Richard Conte, and the mall's owner and developer, J. Daniel Lugosch, III. ABC alleges that at that meeting, Conte and Lugosch entered into an oral contract by which ABC would continue to work overtime on the Project, and would be paid for such overtime directly by Morse Diesel.

ABC alleges that after it entered into this oral contract, it invoiced overtime to Morse Diesel, but that it was paid only a fraction of what it claims was due for the overtime work. ABC also contends that

PPGLP issued "change orders" to Morse Diesel for overtime work done by ABC, but that ABC was never paid for such "change order" work. All in all, ABC claims that it is owed $605,693 for overtime work on the Project for the months of March—August 1999. In addition, ABC claims that it was underpaid by $5,491 for its invoiced overtime work in February 1999. Thus, ABC brings this diversity action against PPGLP, asserting claims for (1) breach of contract; (2) quantum meruit; and (3) promissory estoppel, each of which seek damages in the amount of $611,184.

During construction of the mall, SMI–Owen sued Morse Diesel and PPGLP in Rhode Island federal district court (the "SMI–Owen Litigation"). On February 25, 2000, while that litigation was pending, ABC, through its attorney, submitted its claim against SMI–Owen in a letter addressed to the lawyers for SMI–Owen. Consolidated Appendix of Defendant Providence Place Group Limited Partnership in Connection with Its Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.App."), Ex. C. The letter sets forth that it is a "Communication Provided Pursuant to Fed.R.Evid. 408," and that it "is inadmissible in any judicial or arbitration proceeding." It also states, "I have enclosed information related to the calculation of [ABC's] claim against SMI–Owen." Appended to the letter is a spreadsheet indicating the unpaid overtime charges for the months of February—August 1999. The amount claimed by ABC against SMI–Owen in the spreadsheet for unpaid overtime work is $611,184, the same figure that ABC demands in this case.

After ABC stated its "preliminary" claim against SMI–Owen (totaling $8,992,360), SMI–Owen merged the entire ABC claim, including the $611,184, into the SMI–Owen Litigation, by amending its Complaint against Morse Diesel and PPGLP to reflect additional allegations and an increased damages figure. Moreover, SMI–Owen attached ABC's demand letter to the Amended Complaint in the SMI–Owen Litigation.

The SMI–Owen Litigation settled, *see* Def.App., Ex. B, and on July 26, 2000, SMI–Owen signed a release, on behalf of itself and its agents, setting forth SMI–Owen's obligation to indemnify PPGLP against any claims asserted against PPGLP in the SMI–Owen Litigation. *See* Def.App., Ex. A.

On March 15, 2001, ABC entered into a settlement agreement with SMI–Owen, wherein ABC specifically released PPGLP "with respect to any claim previously asserted or which could have been asserted against SMI–Owen" that relates to the Project. Def.App., Ex. F.

Defendant claims that ABC now reasserts the same overtime claims against PPGLP that it already settled and released with SMI–Owen. Defendant therefore moves to dismiss or for summary judgment based on (1) the doctrine of *res judicata* or claim preclusion; and (2) the fact that the claims asserted by ABC have been released. Plaintiff disputes that the overtime claims are the same, arguing that ABC should be permitted to bring its overtime claims directly against PPGLP pursuant to the alleged oral contract between Conte and Lugosch.

## II. *Analysis*

### 1. *Standard of Review*

The parties request that the Court examine various affidavits and exhibits that do not form part of and were not attached to the Complaint. As authorized by Fed-

eral Rule of Civil Procedure 12(b),[1] the Court will therefore treat Defendant's motion as one for summary judgment.

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, this Court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002); *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir. 1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). In order to defeat a properly supported motion for summary judgment, therefore, the nonmoving party must es-

tablish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

### 2. *Res Judicata*

 Defendant argues that the doctrine of *res judicata* bars ABC's overtime claims, since the claims in this action were already brought against it in the SMI–Owen Litigation. The Court begins by observing that federal law principles of *res judicata* govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court. *In re El San Juan Hotel Corp.*, 841 F.2d 6, 9 (1st Cir.1988). The First Circuit has explained that

> [u]nder the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action. The policy rationale behind res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Res judicata, therefore, prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit.

*Apparel Art Int'l, Inc. v. Amertex Enters., Ltd.*, 48 F.3d 576, 583 (1st Cir.1995) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101

---

1. The pertinent portion of Rule 12(b) reads:
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court,

 the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980) (internal citations omitted)).

■ In determining whether *res judicata* precludes litigation of a party's claims, the Court considers three factors: (1) whether a final judgment was entered on the merits in an earlier suit; (2) whether there is sufficient identity between the causes of action asserted in the earlier and later suits; and (3) whether there is sufficient identity between the parties in the two suits.[2] *Id.*

The critical *res judicata* component in this case is the sufficiency of identity between the parties in the two actions. ABC was not a party to the SMI–Owen Litigation. Defendant points out, however, that non-parties may be bound by a prior judgment if they are either "nominally different" or in privity with a party to the prior action. *See* Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.Mem.") at 8.

The parties spar over the import of *E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co.*, 635 A.2d 1181 (R.I.1994). There, the plaintiff electrical subcontractor and steel supplier sued the surety of another subcontractor for damages resulting from delays on a construction project. *Id.* at 1183. Previously, the defendant subcontractor and the prime contractor had sued the city of Cranston on identical issues involving the same underlying project, which had resulted in an arbitration decision for the City. In the second action, the surety contended that *res judicata* applied as to the

electrical subcontractor's claims against it, because they had already been considered by the arbitrators in the first action. In addressing the *res judicata* requirement of substantially identical parties, the Rhode Island Supreme Court stated:

> In a comment, the Restatement states that "parties may subject themselves to the court's jurisdiction by making an appearance or participating in the action in a manner that has the effect of an appearance."

635 A.2d at 1187 (citing 1 Restatement (Second) Judgments § 34(1) at 345, cmt. a (1982)). The court went on to find that the electrical subcontractor was, in fact, a party to the arbitration because it had submitted claims in the arbitration proceeding, and was therefore deemed to have "ma[de] an appearance." *Id.* Such is not the situation here, where ABC was neither a party to the SMI–Owen Litigation nor submitted a claim on its own behalf in that action.

Moreover, there is no evidence that ABC ever acted as the agent for, or was otherwise in privity with, SMI–Owen. The uncontroverted evidence is that SMI–Owen and ABC are distinct legal entities. *Res judicata* therefore cannot bar the claims that ABC now brings against PPGLP.[3]

### 3. *Rule 408*

Defendant next asserts that ABC's overtime claims must be dismissed because ABC released these claims in March 2001. Plaintiff rejoins that the March 2001 re-

---

**2.** *Res judicata* (sometimes called "claim preclusion") differs from its juridical cousin, collateral estoppel (or "issue preclusion"), in that the latter only proscribes relitigating an issue of fact or law once a court has already decided that issue in a suit on a different cause of action involving a party to the first action. *See McCurry,* 449 U.S. at 94, 101 S.Ct. 411.

**3.** Given its conclusion that Defendant has not established a sufficient identity of parties between the two actions, the Court need not assess whether or not there is an identity of causes of action.

lease operates as a bar only as to claims that could have been asserted against SMI–Owen, and that ABC may bring its overtime claims directly against PPGLP under the terms of the alleged oral contract between Lugosch and Conte. Thus, Defendant's argument is premised on PPGLP's ability to demonstrate that ABC's overtime claims were asserted or could have been asserted against SMI–Owen.

The crucial piece of evidence supporting this proof is the February 25, 2000 letter from ABC to SMI–Owen, enclosing the spreadsheet that sets forth an amount of $611,184 for overtime work. Plaintiff objects to the consideration of this letter, however, as it was prepared under the aegis of Federal Rule of Evidence 408, which provides:

> **Compromise and Offers to Compromise**
>
> ■ Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The question to be answered by the Court, therefore, is whether the February 25, 2000 letter offer of compromise from ABC to SMI–Owen (later incorporated into SMI–Owen's Amended Complaint against PPGLP in the SMI–Owen Litigation) may now be used by PPGLP to demonstrate that the claims ABC asserts in this litigation were released in March 2001.

The answer lies in descrying the purpose for which PPGLP seeks to introduce this letter: whether the purpose is (1) to demonstrate that ABC had a claim for overtime expenditures that it raised or could have raised against SMI–Owen, and which ABC subsequently released; or (2) to demonstrate that ABC's overtime claims against it are not meritorious, or are inflated.

■ Rule 408 is not offended if the letter is admitted to establish only that ABC already released its overtime claims. "[A]dmissions made during the course of the negotiations may not be introduced as evidence of liability on the underlying claim—such admissions may, however, be introduced for other purposes." *Catullo v. Metzner,* 834 F.2d 1075, 1079 (1st Cir.1987) (noting also that "the rule has limited application to completed settlements which fully resolve the dispute and preclude future claims arising out of the same transaction"); *see also Urico v. Parnell Oil Co.,* 708 F.2d 852, 854 (1st Cir.1983) (evidence concerning negotiations is admissible to establish admissions of fact).

In *Central Soya Co., Inc. v. Epstein Fisheries, Inc.,* 676 F.2d 939 (7th Cir. 1982), the Seventh Circuit addressed a similar evidentiary circumstance. There, plaintiff, a seller of catfish feed, had entered into a settlement agreement with a third party purchaser of fish feed which provided that, in exchange for $50,000, the third party would not sue plaintiff for its defective feed. *Id.* at 941. The third party continued to purchase plaintiff's feed thereafter, but eventually refused to pay

for what it had already bought. *Id.* The plaintiff then sued the third party for the outstanding balance, and joined the defendant, plaintiff's guarantor, as a defendant. *Id.* The third party counterclaimed for damages allegedly caused by the defective feed since the first settlement, but the dispute between plaintiff and the third party was settled before trial. *Id.* However, defendant guarantor remained in the case, and plaintiff sought to hold defendant liable for the third party's indebtedness to plaintiff. *Id.*

On appeal from a judgment in favor of the plaintiff, the defendant argued that the lower court should not have excluded testimony of negotiations leading to the first settlement between plaintiff and the third party (wherein plaintiff paid the third party $50,000 and the third party agreed to continue to purchase feed). In reversing and remanding the case, Judge Posner, writing for the court, agreed with the defendant's position:

> Rule 408 excludes evidence of compromises and offers to compromise, and of "statements made in compromise negotiations." Although this language is broad enough to cover [the disputed] testimony, the purpose of the rule must be considered. It is to encourage settlements. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability. But [the disputed] testimony was not offered for the purpose of demonstrating that [plaintiff] was or was not liable to [the third party] for breach of its contract to supply a complete catfish feed. *The purpose was to demonstrate what the terms of the settlement of [the third party's] claim were. "Where the settlement negotiations and terms explain and are a part of another dispute they must often be admitted if the trier is to understand the case."* 2 Weinstein &

Berger, Weinstein's Evidence P 408[5], at 27 (1981). That is the case.

*Id.* at 944 (emphasis supplied); *see also Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.,* 119 F.3d 1505, 1512–13 (11th Cir.1997) ("The settlement agreements were not offered for the impermissible purpose of proving the invalidity of a claim or its amount, but rather for the permissible purpose of resolving a factual dispute about the meaning of the settlement agreements' terms."); *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293 (2nd Cir.1999) ("[E]vidence of a settlement agreement and its surrounding circumstances 'though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' *i.e.,* for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle.' ") (citations omitted).

Here, PPGLP seeks to introduce the February 25, 2000 letter in order to explain its view of the operation and scope of the March 15, 2001 release. It does not introduce the letter to disprove ABC's entitlement to overtime compensation on the Project, which is the basis for the claims in this action. As in *Central Soya,* Rule 408 does not prohibit PPGLP from offering settlement negotiations into evidence to explain the terms of ABC's settlement agreement (and the release executed therewith) with SMI–Owen.

4. *Operation of the Release*

■ The relevant language of the March 15, 2001 release states:

> For and in consideration of said payment referred to in paragraph 1 being made, [ABC] releases SMI–Owen, ... Morse Diesel International, Inc., [PPGLP,] and owners of the Providence Place Mall ... with respect to any claim previously asserted or which could have

been asserted against SMI–Owen related to the above-referenced projects....

Def.App., Ex. F, ¶ 2.

The settlement negotiations embodied in ABC's February 25, 2000 letter to SMI–Owen amply demonstrate that ABC was contemplating a "claim" against SMI–Owen:

> I have enclosed information related to the calculation of [ABC's] **claim** against SMI–Owen. In your review of this information, please note that the amount of the **claim** in this document has increased.... The **claim** consists of contract balance **claims** and **claims** for extras determined as of the date of this communication and may increase in amount.

Def.App., Ex. C (emphasis supplied). Moreover, the spreadsheet attached to the letter clearly sets forth a balance for unpaid overtime work of $611,184. *Id.*

Plaintiff attempts to diminish the importance of the letter by denying that it represents a fully-matured claim, instead characterizing it as "a working formulation of potential claims [ABC] believed it had against SMI–Owen at that point in time." Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, at 5. The expansive language of the release, however, clearly includes such "potential claims." Indeed, SMI–Owen understood the February 25 letter to be a statement of ABC's claims, since it amended its pleadings in the SMI–Owen Litigation to reflect the overtime damages demanded by ABC. No other damages for allegedly unpaid overtime work are in dispute. Furthermore, nothing in Conte's affidavit (the only evidence proffered by ABC opposing summary judgment) is in-

consistent with the conclusion that ABC's overtime claims in this case are the very same claims ABC asserted against SMI–Owen: Conte merely states that ABC performed overtime work pursuant to an oral agreement that he made with Lugosch, and that ABC is still owed $611,184. Conte Aff., ¶¶ 10, 13. Conte may well have had such a conversation with Lugosch, and indeed they may have struck an understanding pursuant to which ABC continued to work overtime believing PPGLP would pay the bill. However, when ABC executed its release of claims in the litigation with SMI–Owen, it specifically included claims that "could have been asserted" against SMI–Owen and released PPGLP with regard to such claims. The claim for overtime clearly "could have been asserted" against SMI–Owen at the time of the release because the hours had been worked, the expenses incurred. To allow ABC to bring this claim, in the face of the explicit terms of the release, would undermine the intent of all the parties to the release.

In sum, the Court finds that the claims ABC brings in this action, all of which pertain to the payment of overtime work by ABC on the Project, were released by ABC on March 15, 2001.[4] Summary judgment is therefore appropriate as to all of these claims.

## III. *Conclusion*

Based on the foregoing analysis, the Court orders that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED,

---

4. Given its conclusions respecting the operation of the March 15, 2001 release, the Court need not discuss the parties' contentions con-

cerning the operation of the July 26, 2000 release executed by SMI–Owen on behalf of its agents.