Merrick, J.
Twenty years ago on November 7,1991, a 1980 Rolls Royce Corniche, owned by plaintiff Timothy J. Sheehan (“Sheehan”),[2] was damaged in a collision, allegedly caused by the operator of a vehicle owned by defendant Helen Miller (“Miller”) and insured by defendant Liberty Mutual Insurance Company (“Liberty Mutual”). The case seems to give the lie to the concept of “the relatively expeditious and inexpensive method of adjudication which arbitration affords.” Floors, Inc. v. B. G. Danis of New England, Inc., 7 Mass. App. Ct. 356, 358 (1979).
On November 7, 1994, the day the statute of limitations period would expire, Sheehan filed this action in the Barnstable Superior Court. Sheehan’s complaint *29 combined in a single count claims in negligence for property damage against Miller and for unfair and deceptive practices in the handling of the claim by Liberty Mutual. The same counsel appeared for both Miller and Liberty Mutual.
On a scheduled trial date of April 22,1996, the case was transferred to the District Court under Rule 29 of the Rules of the Superior Court and G.L.c. 231, §102C as then in effect. The District Court conciliator’s report of a court conciliation on August 1, 1996 states:
Arbitration has been agreed to by the parties on the issue of damages — Liability is admitted — Arbitration to be completed by 11/15/96 — the issue of chapter 93A is to be assigned a trial date of 12/2/96 — pltf’s 93A is sketchy in the pleadings, but plaintiff is pro se — advised each of the parties to file agreement w/ court for binding arbitration — Should they also be required to file Stip of dismissal for that portion being arbitrated??
No other written agreement to arbitrate was ever made, but the parties agree that only the tort claim for property damage was referred to arbitration. An arbitration occurred over three days on February 26, March 14, and April 7,1997.
The bench trial of only the G.L.c. 93A claim, which was scheduled for December, 1996, was continued three times by the parties. In the face of a final bench trial date of May 15,1997, all parties entered into a stipulation, filed on May 12,1997, “that any claims in this action not disposed of in the binding arbitration in which the parties engaged on February 26,1997, March 14,1997 and April 7,1997 be dismissed with prejudice” (emphasis added).
The next docket entry, a year later on March 9,1998, reflects the filing of an arbitrators’ decision, notice to the parties, and dismissal of the action. The arbitrators’ report states that after hearings in February, March, and April, 1997, the arbitrators met a year later on February 26,1998 and awarded property damages in the amount of $40,257.33. The arbitrators reserved the questions of interest for the court and loss of use to the “pending” G.L. c. 93A action against Liberty Mutual, perhaps unaware that the G.L.C. 93A action had been dismissed a year earlier.
There was next a motion brought before the court on April 1,1998, apparently to require payment of the property damages award exclusive of loss of use damages. (The hearing transcript is in the record, but the motion is not.) Without any use of the words “separate and final” or reference to Mass. R. Civ. P. 54(b), the judge ordered the arbitration finding of $40,257.33, plus interest of $16,169.11 and costs, to be paid. A separate judgment was actually issued on April 2, 1998 for that amount against both Miller and Liberty Mutual. Liberty Mutual paid that judgment with interest.
In July, 2000, Liberty Mutual brought a separate Superior Court action against all the parties, including defendant Sheehan and Mrs. Sheehan individually, to restrain the conduct of further arbitration on the loss of use issue. The Superior Court granted the relief, but was reversed by the Appeals Court in February, 2003.
For reasons that are unclear on the record, the arbitration of the loss of use issue did not resume until nearly eight years later. In September, 2010, the arbitrators invited the parties to submit any materials supplementing the earlier evidence on the loss of use issue. It was undisputed that the time necessary actually to perform the *30 repairs on the car was three months. A hearing was held on February 18, 2011. Sheehan’s arguments were devoted to basing loss of use damages on Liberty Mutual’s handling of the claim. He argued that he was entitled to eighty months loss of use, including the three months necessary to perform the repairs, plus seventy-seven months from the date of the accident until the time Liberty Mutual paid the property damages, plus interest, on April 15,1998. Miller argued that she was not responsible for the claims handling by Liberty Mutual and should not be charged with damages occasioned by it.
In their award, dated February 17, 2011, the arbitrators awarded Sheehan $172,800.00 for loss of use damages. The loss of use damages (exclusive of interest) of $120,000.00 were calculated at $1,500.00 per month for eighty months, which the arbitrators stated was the time from the date of the accident until the date of Liberty Mutual’s payment. That time period was seventy-seven, not eighty, months. The arbitrators took the eighty-months figure from Sheehan’s brief, but neglected to mention the three months he included as the time actually necessary to do the repairs. The award also included $52,800.00 prejudgment interest at twelve (12%) percent from the commencement of the action to the date of the award.
On March 1, 2011, the court entered a judgment upon the arbitrators’ award in the amount of $172,800.00 in favor of Sheehan against Miller. Miller filed a notice of appeal.
Miller also moved to vacate the award on several grounds, including that the arbitrators had exceeded their authority. Sheehan moved to alter or amend the judgment by (1) adding Liberty Mutual as a defendant, and (2) entering the judgment (including the arbitrators’ award of prejudgment interest through February, 2011) as an amended or supplementary judgment to the thirteen year old judgment of April 2, 1998 with postjudgment interest on the full amount to run from that date.
Amotion judge denied Miller’s motion to vacate the award and allowed Sheehan’s motion to amend. An amended judgment was entered on March 30,2011 in favor of Sheehan against both Miller and Liberty Mutual in the amount of $442,368.00, apparently on Sheehan’s theory of interest. A second amended judgment was ultimately entered on April 15,2011 in favor of Sheehan against both Miller and Liberty Mutual in the amount of $172,800.00, with interest to run at twelve (12%) percent “from April 2,1998 to the date of payment pursuant to G.L.c. 231, Section 6B.” Miller and Liberty Mutual have appealed that judgment.
1. Liberty Mutual was a party in this case only to the extent that allegations of unfair and deceptive practices in the handling of the claim were made against it. Liberty Mutual was not alleged to have negligently caused Sheehan’s property damage. Nothing in this case removes it from the general rule that an injured party may not bring a direct action for the damages caused by a tortfeasor against the tortfea-sor’s liability insurer until after he has obtained a judgment against the tortfeasor. See G.L.c. 175, §113; G.L.C. 214, §3(9). See also Rogan v. Liberty Mut. Ins. Co., 305 Mass. 186, 188 (1940); Connolly v. Bolster, 187 Mass. 266 (1905). It is undisputed that only the tort claim for property damage was referred to arbitration. The remainder of the action, including the claim for unfair and deceptive practices against Liberty Mutual, was dismissed with prejudice. It is of no consequence that there was not a separate order dismissing Liberty Mutual from the case or that the property damages judg *31 ment of April 2,1998 named Liberty Mutual and was not appealed. The claims against Liberty Mutual were ordered dismissed at the time of the scheduled trial of them in May, 1997. There is no claim against Liberty Mutual remaning in the case.
As we have noted, a separate judgment for property damages, exclusive of loss of use, was actually issued on April 2,1998.[3] The judge’s memorandum of that date also stated that further proceedings regarding loss of use were pending before the arbitrators and added: ‘‘In the event an award for loss of use is made hereafter by the arbitration panel, the sum ordered to be paid herein shall be supplemented by any additional sum added to the arbitration award of February 26, 1998.” Whether he contemplated issuing a separate judgment or amending the judgment of April 2, 1998, he certainly did not contemplate the arbitration of the loss of use issue taking thirteen years. The judgment of April 15,2011 was bound to reflect the situation as it existed on that date.
However, the final judgment provided for interest at twelve (12%) percent “from April 2, 1998 to the date of payment pursuant to G.L.C. 231, Section 6B.” To the extent the judgment cites G.L.c. 231, §6B, governing prejudgment interest in tort actions, it is duplicative of the prejudgment interest included in the award and must be vacated. The language in the judgment is a direct quotation from the proposed order on the subject, drafted by Sheehan and signed by the motion judge. Sheehan seems to argue that the interest should have been designated postjudgment interest under G.L.c. 235, §8. As the erroneous order for interest under G.L.c. 231, §6B was made at the request of Sheehan, he may not be heard to complain of its designation. Moreover, there is certainly no valid basis for Sheehan’s argument that the judgment entered on April 15, 2011, including prejudgment interest through February, 2011, should be subject to postjudgment interest from April 2,1998.
Sheehan’s motion to alter or amend the judgment should have been denied.
2. Miller’s motion to vacate the award, on the other hand, should have been allowed, at least in part. The issue submitted to the arbitrators from the outset was the claim for property damage to Sheehan’s vehicle caused by the negligent operation of Miller’s vehicle. Although the arbitrators specifically excluded loss of use in their original award, the issue had been properly before them.
The allegation of great damage to the automobile of the plaintiff implies not only expense of repair but also loss of use while the harm caused by the collision is being amended. It is difficult to conceive of an injury to an automobile such as is here described which does not import as an inevitable consequence loss of use for some period of time. The loss of use of the automobile during the period of repair is as much the natural and necessary consequence of the tortious act of the defendant described in the declaration as is the cost of the repair. It is as plainly so as is the loss of time of an individual arising from personal injuries, or the loss of use of any chattel arising from wrongful act.
*32 Antokol v. Barber, 248 Mass. 393, 396 (1924).
Miller’s motion to vacate the arbitration award raised a number of objections, most of which fall into the category of errors of law or fact by arbitrators that may not be appealed.
Unlike our review of factual findings and legal rulings made by a trial judge, we are strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. “A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” “Even a grossly erroneous [arbitration] decision is binding in the absence of fraud.” “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference” (citations omitted).
City of Lynn v. Thompson, 435 Mass. 54, 61-62 (2001).[4] However, the question of whether an arbitrator exceeded his authority, in violation of G.L.c. 251, §12 (a) (3), is always open. Weiner v. Commerce Ins. Co., 78 Mass. App. Ct. 563, 566 (2011). In the event of an award in excess of the arbitrator’s authority, the award must be vacated. Id. For example, an arbitrator appointed to decide “questions concerning the insured’s rights against the owner and operator of the uninsured motor vehicle” exceeded his authority by deciding the insurer’s liability under the policy. Royal Indem. Co. v. Blakely, 372 Mass. 86, 87 n.2 (1977), quoting Aetna Cas. & Sur. Co. v. Poirier, 371 Mass. 257, 260 (1976).
In the present case, Sheehan’s arguments to the arbitrators on the subject of the recoverable time of loss of use were largely devoted to assertions about Liberty Mutual’s delay in the adjustment and payment of his property damage claim. Miller’s counsel, on the other hand, objected to consideration of Liberty Mutual’s claims handling in the assessment of damages against her. The arbitrators adopted Sheehan’s position and awarded not just damages against Miller caused by the negligent operation of her motor vehicle, but damages caused by Liberty Mutual’s claims handling. In including that subject in their award, the arbitrators exceeded their authority, and the award must be vacated to the extent that it was outside their authority.
3. In support of his position that the existence of Miller’s insurance and Liberty Mutual’s claims handling were relevant to Miller’s liability and, therefore, within the arbitrators’ authority to consider, Sheehan urged upon the arbitrators, the motion judge, and this Appellate Division the case of Urico v. Parnell Oil Co., 708 F.2d 852 (1st Cir. 1983). In that case, Urico’s tractor-trailer was damaged by Parnell’s truck. *33 The tractor-trailer had been leased out, and its operator settled the property damage claim with Parnell’s insurer and received payment. When Urico later put himself forward as the proper claimant, Parnell’s liability insurer agreed to pay for the property damage to Urico as well (effectively a double payment) if Urico released his loss of use claim. Urico refused. The tractor-trailer had been repaired but, as Urico was unable to pay for the repairs, the repairer kept possession of the tractor-trailer, extending the loss of its use. Id. at 853-854.
In its Urico decision, the First Circuit upheld a verdict based upon the jury’s answers to questions that made it clear that the jury included damages for loss of use caused by the insurer’s misconduct, rather than the defendanf s misconduct. Id. at 855. We decline to follow the Urico decision in this case. While we do not think that Massachusetts law imposes varying liabilities on tortfeasors, depending on whether they are insured, the dispositive fact is that Urico was based upon Massachusetts law that the decision itself acknowledges no longer exists.
The Court in Urico made it plain that it was not stating existing Massachusetts law, but was relying upon a California case, Valencia v. Shell Oil Co., 23 Cal. 2d. 840 (1944), which it “forecast” the Supreme Judicial Court would follow. Urico, supra at 856 n.7.[5]
In Valencia, defendant Shell Oil Co. had promised Valencia it would pay for repairs to his truck, a promise upon which it later reneged. The suit was not against an insurer. For its “forecast” of the Supreme Judicial Court’s likely view on the issue, the Urico Court cited DiMarzo v. American Mut. Life Ins. Co., 389 Mass. 85 (1983). Urico, supra at 856 n.7. However, DiMarzo involved an injured plaintiff suing the insurer under an assignment of the tortfeasor’s rights against his liability insurer. Id. at 90. Neither Valencia nor DiMarzo suggests that a tortfeasor-insured may be personally liable for the conduct of his insurer.
To the contrary, at common law in Massachusetts, the rights and liabilities of the parties to a negligence action are generally not affected by the presence or absence of insurance. Stamboulis v. Stamboulis, 401 Mass. 762, 763 n.4 (1988) (“This distinction is not logical, and it may not survive.”), citing New Hampshire Ins. Co. v. Fahey, 385 Mass. 137, 138 (1982), Pevoski v. Pevoski, 371 Mass. 358, 362-363 (1976) (Quirico, J., concurring), and Lewis v. Lewis, 370 Mass. 619, 630 n.4 (1976). Moreover, the Court in Urico conceded that its ruling was based on a state of Massachusetts law applicable to the underlying facts that had subsequently been amended by the Massachusetts Legislature in a very relevant way. The Court noted that the events in the case occurred before a 1979 legislative amendment[6] to G.L.c. 93A, §9, effectively permitting a third-party claimant to bring an action directly against the liability insurer for unfair claims practices, Urico, supra at 856 n.7, as indeed Sheehan did in the present case. The implication seems to have been that since Parnell had a *34 right to bring an action under G.L.c. 93A to force its insurer to act and Urico did not, Parnell could be chargeable with its insurer’s misbehavior. Parnell’s insurer was not, and could not have been, a party in the Urico case. Under current law, Sheehan was free to sue Liberty Mutual and did so in this case. That he chose to stipulate to dismiss that claim with prejudice when it was called for trial does not erase the distinction between the instant case and Urico. Neither did it permit the arbitrators to include in their award the loss of use damages from Liberty Mutual’s claims handling, a subject outside their authority.
4. The award is not entirely a nullity, however. As we have noted, Sheehan is entitled to recover for the loss of use of his vehicle for the time necessary to perform the repairs. Antokol, supra at 396. An award may be severed and partially enforced where partial enforcement “would not do an injustice.” Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 417 (1984), quoting Watertown Firefighters, Local 1347 v. Town of Watertown, 376 Mass. 706, 717 (1978). An award will not be partially enforced if there is “a functional relationship between the legal and illegal parts such that execution of one without the other would produce an untoward or unworkable result,” or “where it can be seen that the arbitrator’s decision as to the legal part was influenced by his disposition of the part later found to be illegal.” Id. at 417-418.
In this case, the monthly valuation of loss of use at $1,500.00 is in that category of decisions within the authority of arbitrators that we have noted are incontestable. City of Lynn, supra at 61-62. The three-month period for actual repair is not in dispute. So much of the award can be enforced as awards $4,500.00, plus interest, from November 7, 1994 at twelve (12%) percent to date of the judgment. Costs were already included in the original judgment, and no additional ones have been assessed.
The judgment is vacated. A new judgment is to be entered for Timothy J. Sheehan, partner of Eight Bulls, a partnership, against defendant Helen Miller in the amount of $4,500.00 with interest from November 7,1994. As to defendant Liberty Mutual Insurance Company, the action is dismissed.
So ordered.

 The title of the plaintiff in the caption of the complaint and subsequent pleadings is “Eight Bulls, A Partnership,” but paragraph 8 of the complaint, describing the plaintiff, states: “Plaintiff, Timothy J. Sheehan, is a general partner of Eight Bulls, a partnership and he brings this action as a partner and on behalf of the partnership.” An action may not be brought in the name of a partnership, but the designation of the plaintiff must include the name of a partner. Roberts-Haverhill Assocs. v. City Council of Haverhill, 2 Mass. App. Ct. 715, 721 (1974). According to Sheehan, the only partners are himself and his wife. There is no written document creating the partnership. The partnership does not engage in any business and never had a tax identification number. It held title to the Rolls Royce involved in this case since its purchase in 1981. It was created to hold title to the Rolls Royce and another vehicle. The Rolls Royce was used solely for the personal pleasure of the Sheehans as a second vehicle. Sheehan was general partner of a North Carolina limited partnership also named “Eight Bulls,” which went through bankruptcy in 1993, which Sheehan testified was a different partnership. Sheehan went through personal bankruptcy in 1994, and did not list this partnership in response to a question on partnerships in which he had an interest.

 The Appeals Court’s unpublished Rule 1:28 decision in the collateral case of Liberty Mut. Ins. Co. v. Sheehan, No. 02-P-646 Jan. 21, 2004), in which all parties here were also parties, treats the April 2,1998 judgment as final and not appealed.

 The arbitrators’ exclusion of loss of use damages in their initial award may have fallen into this category of errors of fact or law that cannot be altered by the court. The Rule 1:28 decision in Liberty Mut. Ins. Co. v. Sheehan, No. 02-P-646 (Jan. 21, 2004) states only that any decision by the court modifying the arbitration cannot be collaterally attacked. The issue is not raised in this appeal.

 The Urico decision also states that it is not following Massachusetts statutes regarding the exclusion of evidence about insurance in cases of this type, but rather the Federal Rules of Evidence. Id. at 854 n.l.

 Statute 1979, c. 406, §1 amended G.L.c. 93A, §9 by changing the definition of persons entitled to sue for unfair or deceptive practices from a “purchaser” of goods or services to anyone “injured” by such practices.